## SUPREME COURT.

WILLIAM H. RICHARDS, in his own right and as trustee, &c. agt. THE NORTH WEST PROTESTANT DUTCH CHURCH, in the city of New York, and others.

The right of *burial* in a lot, when confined to a *church yard,* as distinguished from a separate independent *cemetery,* although *conveyed* with the common formula of " heirs and assigns forever," must stand upon the same footing as the right of public worship in a particular *pew* of the consecrated edifice.

It is an *easement* in, and not a title to, the freehold, and must be understood as granted and taken subject (with compensation of course,) to such changes as the altered circumstances of the congregation or the neighborhood may render necessary.

Hence, where a deed purports to convey a certain lot described by metes and bounds and as belonging to a church corporation, adjacent to a church edifice, in a church yard, and to be used exclusively as a place of interment, and subject to church assessments for regulation and repair, must be considered as a grant of a mere *easement,* and not of an ordinary absolute estate in fee.

Consequently, no *order of the court* is necessary on a sale of such premises by the church corporation to the grantee, although such order is necessary in an absolute conveyance of the *soil.*

Every deed of conveyance, whether for a pew or vault, or a house, is a contract between the parties to be interpreted according to their actual or fairly to be presumed intent; and this intent is to be collected from the whole instrument, including its scope, object, and subject matter.

*New York Special Term, August,* 1859.

THE complaint sets up a claim to a vault in the grounds of this church on Franklin street, under the following deed:

The parties of the first part " for and in consideration of the sum of two hundred dollars, current money of the United States of America, to them in hand paid by the party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents, do grant, bargain, sell and convey unto the said party of the second part, and to his heirs and assigns forever, all that certain lot or piece of ground, situated, lying and being in the church-yard abovesaid, beginning on the northwest corner of the ground belonging to the New York Sugar Refining Company on Franklin street, thence running westerly along Franklin street twenty feet, thence southerly to the northeasterly corner of the church, and along the church twenty feet, thence easterly twenty feet to the line of the said sugar house refinery, thence along the line of the said sugar house company to the place of beginning, the whole of it being twenty feet square; to have and to hold all that said lot of ground with the appurtenances unto the said party of the second part, his heirs and assigns, to the only proper use and behoof of the said party of the second part, his heirs and assigns forever, provided always, and these presents are upon these conditions, nevertheless, that the lot of ground shall never be used, occupied or appropriated by the said party of the second part, his heirs or assigns, for any other use or purpose than to inter such dead bodies in graves or in vaults, as the party of the second part, his heirs and assigns, shall from time to time think proper; and further the parties of the first part, agree with the party of the second part, that they shall never suffer it to be dug up or destroyed, but that it shall be the duty of the parties of the first part and their successors in office, to keep it harmless, and never to appropriate it to any other

use than to deposit the dead as aforesaid, without the consent of the party of the second part."

The complaint sets up that the church officers had agreed to sell the church property, including the above vault, and had already removed some of the remains of the plaintiffs' relations from said vault against the consent of the plaintiffs, and without their knowledge, and were about to remove all the residue. And they ask for a perpetual injunction against the defendants.

ROOSEVELT, Justice. The plaintiffs claim to be vault owners, in the church-yard of the Dutch church in Franklin street, lately sold under an order of the court.

They demand that the defendants be compelled to replace the bodies which have been removed to Greenwood; to restore the vault to its original state, and to refrain, under pain of commitment, from any further interference with their rights.

The character and legal attributes of burial property, as distinguished from ordinary absolute ownership in fee, are not perfectly clear. In the present case a preliminary injunction was at first granted by one of the judges, but on a further, although not final hearing by the same judge, was dissolved.

The remains of the deceased relations had already been removed, and removed, I must say, to a much more suitable, if less legal resting place, than the heartless bowels of a noisy, bustling, money-making city. Nothing is left, therefore, now that all the pleadings and proofs are before the court, but to determine the mere dry, legal rights of the parties.

Were it otherwise, however, and could the dead without rising, speak, a voice it seems to me, (in the apt quotation of Mr. Justice MITCHELL,) would assuredly be heard saying, "Ye shall carry up my bones from hence."

Franklin street, between Church street and West Broad-

way, has lost every attribute of repose. Its unfitness for a cemetery, if spiritual bodies can see and feel, must be as palpable to the dead as to the living; still the plaintiffs insist that there shall be no removal, and that, as matter of legal right, without their consent there can be none.

In 1817, the corporation of the church, it appears, without any previous order of the Chancellor, conveyed a small piece of ground in the church-yard adjoining the church edifice, to the grantee, " his heirs and assigns, forever," to be used, in the language of the instrument, for the purpose of a burial place, and for no other purpose whatever.

In this plot the grantee, soon after his purchase, constructed a vault, which became the depository, from time to time, of his own remains and those of deceased relatives, till the year 1852, when, on the petition of the corporation of the church, an order was made by this court, authorizing a sale of the church edifice, and of the whole church premises, including the ground in question.

A sale was accordingly made, and on report of its terms and conditions, was duly confirmed, and the bodies thereupon, with the approbation of a large majority of the relatives, decorously removed to a suitable burial place, purchased for the purpose, in the cemetery at Greenwood.

Did sale then, thus authorized and confirmed, divest the title of the representatives of the grantee in the vault which their ancestor had purchased ?

The right of burial, it seems to me, when confined to a church-yard, as distinguished from a separate independent cemetery, although conveyed with the common formula of " heirs and assigns forever," must stand upon the same footing as the right of public worship in a particular pew of the consecrated edifice.

It is an easement in, and not a title to the freehold, and must be understood as granted and taken, subject (with compensation of course) to such changes as the altered cir-

cumstances of the congregation or the neighborhood may render necessary.

The selection of a place of burial in the ground, forming the site of a church, we may safely say, is always made with reference to its religious associations, and with an eye to their continuance.

Suppose the edifice to be destroyed by fire, without the means of rebuilding, (an event not entirely improbable or unprecedented,) must the premises continue an unsightly ruin, with no power anywhere to meet the emergency?

Or must we not rather, from the nature of the contract, and from the character of the subject of its provisions, infer a silent understanding between the parties, (quite as operative as if expressed in words at length,) that in such case the corporation of the church—in other words, the representative body of whom the pew owners, vault owners, and other members of the particular religious associations may be said to be the constituents—should sell the real estate which had become unfit for its original object, and "with the consent and approbation of the Chancellor, apply the moneys arising thereform, to such uses as they should conceive to be most for the interest of the society to whom the real estate so sold belonged."

Every deed of conveyance, whether for a pew or vault, or a house, is a contract between the parties, to be interpreted according to their actual or fairly to be presumed intent.

The statute—to prevent all doubt on this point—makes it in terms the "duty" of all courts of justice, "in the construction of every instrument creating or conveying any interest in land," to carry into effect "the intent of the parties." (1 R. S., 748.)

This intent—the statute further provides—shall be "collected from the whole instrument," and of course from its scope, object, and subject matter, and not from the mere letter of a particular sentence.

Although, therefore, the deed in question, purports to convey a certain specific piece of ground, twelve feet by twenty, we must bear in mind that it describes the premises as belonging to a church corporation, as adjacent to a church edifice, as in a church-yard, and to be used exclusively as a place of interment, and subject to church assessments for regulation and repair.

In this view, both parties, it seems to me, the one in executing, the other in accepting the conveyance, must have considered it as the grant of a mere easement, and not of an ordinary absolute estate in fee.

And hence no order of the Chancellor was applied for, and in that view, none was required. Although such order, in all cases of church property is indispensable to an absolute conveyance of the soil.

Like a sale of a church pew, which gives the mere right to worship in the particular place while the church stands and is occupied for religious purposes, the sale of a church vault gives, it would seem, the mere right of interment in the particular plot of ground, so long as that and the contiguous ground continues to be occupied as a church-yard. The owner of the easement may be, in case of disturbance, and no doubt is, entitled to a reasonable compensation or equivalent, but he cannot interpose a veto to the disposition of the soil, should the court, as was actually the case in this instance, on application of the legitimate church officers, deem such disposition proper, and order it accordingly.

Every person purchasing either a pew in a church edifice, or a grave in a church-yard, appendant to a church, does so with the full knowledge and implied understanding that change of circumstances may, in time require a change of location, and that the law, (a positive statute which has been in existence nearly half a century,) looking to such exigency authorizes the corporation, when it arrives, as the representative of all interests, with the sanction of the

court, to sell the soil in absolute fee, discharged of all easements, and to make some other more appropriate investment or disposition of the proceeds.

Counsel have cited several authorities in support of their respective positions. Those relating to pew rights are uniform. They all concede that such rights, however strongly conveyed, are divested by a regular sale of the church edifice.

Those relating to vault rights are discordant and neutralize each other. Vice Chancellor McCoun, in the *Brick Church* case, held one way, and Justice Edwards in that of another church, held the opposite. ( *See* 3 *Edward's Ch. Rep.*, 155, *and* 8 *Barb.*, 130.)

The reasoning which leads to the result arrived at in the case of church pews, is applicable, as it seems to me, in a great degree to the case of church vaults. It proceeds upon the assumption—a necessary assumption—that church grants in such cases are made upon the implied condition, that the land shall be subject to the right of what may be called eminent domain—that is, subject to the right of resumption whenever the public use, or a change of circumstances may, in the judgment of the church and of the court, require the exercise of such right, but subject also to the duty of making a just and fair compensation, in the form of money or other suitable equivalent, if required.

As the complaint in this case only calls in question the validity of the sale, and is not adapted to a claim for compensation, it must be dismissed with costs.