| 34  301|
| 92h 171|

## McEachron *vs*. Randles.

If the purchaser of goods, which, by the terms of the contract of sale, are to be delivered and paid for at a specified time, does not tender the price and take the goods within the time agreed upon, the vendor may request him to pay for and take the goods, and in case of his refusal may abandon and rescind the contract, and dispose of the goods as if no contract had been made ; or he may, on due notice to the purchaser, resell the goods as the property of the latter, and recover of him the sum lost by the resale, together with the expenses of keeping the goods.

This right of the vendor to resell the goods, however, when the contract is not rescinded, and when there is no express stipulation authorizing it, in the contract, can only be exercised after due notice to the purchaser, of the time when and the place where the resale will be made.

It is not a ground of error that when the jury returned, to render their verdict, in a justice's court, no one appeared or answered for the plaintiff.

If the plaintiff is present when the jury deliver their verdict, and if, being so present, he is called, before the verdict is received, the fact that no one appears for him, or answers for him, is no ground for not receiving the verdict.

To make the point available as a ground of error, that the directions of the statute have not been complied with, it should be stated that, when the verdict was received, the plaintiff was *absent* and no one appeared or answered for him.

THIS was an appeal from a judgment of the county court of Washington county. The action was commenced in a justice's court. The plaintiff alleged, in his complaint, that on the 1st of June, 1859, he contracted to sell, and did sell, to the defendant, twenty-four lambs, at $2 each, to be taken away by or before the last day of August thereafter. That on the 6th day of July, 1859, the defendant took away five of them, paying $10 therefor, and that he neglected and refused to take away the remainder, by or before the last day of August, or afterwards. That on the 15th of September, 1859, the plaintiff requested the defendant to take away and pay for said lambs, which he refused to do, and thereupon the plaintiff, on the first day of October, 1859, sold the said lambs, for the best price he could, to wit, six shillings apiece, and no more, he having kept them, in the meantime. Wherefore the plaintiff claimed $25 damages, including $5 for keeping the lambs from the 1st of August to the last of Oc-

tober, 1859. The defendant, in his answer, denied the allegations of the complaint, and alleged that the lambs, if any contract or sale was made, were to be delivered, provided the plaintiff should feed or make them fat and in good condition, or change their pasture, as he agreed to do. And that the plaintiff did not properly feed them, but kept and fed them so poorly that they were in poor condition, and worth little or nothing to the defendant; wherefore the plaintiff ought not to sustain the action. The defendant further alleged that if he made the contract at all, he made it as the agent of one Alexander Cheny. On the trial before the justice, the plaintiff was called as a witness in his own favor, and testified as follows: "I sold to defendant last summer 21 lambs at two dollars per head. It was not far from the last week in May or forepart of June I met the defendant on the road; no one was present but us. Defendant said, do you want to sell your lambs; I told him I intended to sell them all; defendant said he was buying lambs. I asked him if he had seen my lambs; defendant said he had seen them two or three days before. Defendant said he would give me two dollars per head, and take them away through the summer, would take some in July—all to be taken away in August. I asked defendant if he wanted me to alter them; he said, let them be as they are. Defendant then said, I suppose you want some money on them, or I ought to pay some money on them; I told him he might do as he pleased; defendant did not pay any money on them. Defendant asked me how many lambs I had; I told him twenty-one; defendant then took out his book and motioned as though he was writing. Defendant came back about the 8th day of July last and told me to bring up the sheep, and he would take some of those lambs away. I brought up the sheep; defendant took five, and paid me $10. Defendant said they did not seem to be thriving; I think there are too many together; can't you give them a better chance. I told him I would do as well as I could; that I had a field in my back lot that

McEachron *v.* Randles.

I could not get at till my rye was cut; I would then separate them, and put them in that lot. I did put ewes and lambs in that field. Defendant did not come and take away the remainder of the lambs. Defendant called afterwards and said, you have not changed those lambs yet; I said I would when I could; it was about the 20th or 25th of July. Defendant said he calculated to do as he agreed, and said that I had not put up those lambs as I agreed; I told him if he did as he agreed, that was all I wanted. I did not again see him until after the last of August; somewhere about the 15th day of September I saw him again; I went on purpose to see him; I found him at his father's, in Hebron; I searched for him at his own residence; I told him I had tried pretty much all the afternoon to find him; I wanted to know what he was going to do about those lambs. Defendant said, you have kept those lambs until the time is passed; you may sell them, or do what you please with them. I said, if I had known you was going to serve me this way, I would have sold them before. That is, in substance, all I recollect was said. I afterwards sold those lambs the last of September. I sold them to Burnham for the best price I could get." Being asked, "What did you get?". The question was objected to: 1st. Because the difference between the contract price, and what plaintiff got of Burnham, was not the proper rule of damages. 2d. That it was irrelevant and immaterial. Objection overruled, and the witness answered, "I got six shillings per head. I am a farmer; have kept sheep. I know the price per week for keeping sheep and lambs, at grazing." The witness was then asked "what it was worth to keep lambs?" The question was objected to because the witness was not shown to be competent, and the objection was sustained. The defendant testified that at the time of making the contract he told the plaintiff he would not take the lambs "unless they were fat," and that the plaintiff made no reply. The plaintiff, in his testimony, denied that the defendant made that remark. It was proved

by other witnesses that seventy-five cents each was the fair market value of the lambs at the time the plaintiff sold the same to Burnham. The plaintiff's counsel requested the justice to charge the jury that if the sale of the lambs from the plaintiff to the defendant was absolute, then the fact that they were not fat formed no defense, as the contract was entire, and by taking away a part he had accepted of all. The justice so charged. The defendant's counsel asked him to charge the jury, that if the contract was specific that the plaintiff was to feed the lambs and make them fat, the plaintiff could not recover unless they found that the plaintiff performed specifically; and the justice did so charge, substantially. The jury found a verdict in favor of the defendant, and judgment was rendered by the justice, against the plaintiff, for costs. The plaintiff appealed to the county court, stating the following grounds of appeal:

" 1. The justice erroneously charged the jury, that if they found that the sale was specific, the plaintiff could not recover, if he failed to perform even the least part of his agreement.

2. The verdict of the jury and the judgment rendered thereon was against the law and evidence in the case.

3. When the jury returned to render their verdict, no one appeared or answered for the plaintiff, and the justice is required to state the facts in that regard.

4. The judgment was not rendered upon the verdict, nor were the costs made up until the next day after the trial, and the justice is required to answer specifically with regard to that.

5. The justice erred in not allowing the plaintiff to show what the keeping of lambs was worth.

6. The justice erred in not striking out of the evidence that part of the defendant's testimony, that he would not take them unless they were fat.

7. The judgment is against law and evidence; the sale of the lambs was absolute in the first instance, and if not, be-

came so by acceptance of part, and that they were not fat is no objection to the plaintiff's right to recover."

The judgment of the justice was reversed, by the county court; and the defendant appealed to this court from the judgment of the county court.

*E. Hill,* for the appellant.

*J. S. Coon,* for the respondent.

*By the Court,* ROSEKRANS, J. If the vendee of goods, which, by the terms of the contract of sale, are to be delivered and paid for at a specified time, does not tender the price and take the goods within the time agreed upon, the vendor may request the vendee to pay for and take the goods, and in case of his refusal may abandon and rescind the contract and dispose of the goods as if no contract had been made; or he may, on due notice to the vendee, resell the goods, as the property of the vendee, and recover of the vendee the sum lost by the resale, together with the expenses of keeping the goods. This rule was established in this court more than half a century ago, and has never been questioned. (*Sands v. Taylor,* 5 *John.* 396. *Bement* v. *Smith,* 15 *Wend.* 497. *Crooks* v. *Moore,* 1 *Sandf. S. C. R.* 297, 302.) The right of the vendor, under the circumstances stated, to treat the contract of sale as abandoned and rescinded, was declared by Justice Holt in 1 *Salk.* 113. If the contract is rescinded, the rights of the parties are the same as if the contract had never been made. (2 *Parsons on Contracts,* 189. 2 *E. & B.* 175. 3 *C. & R.* 678.) No action can be founded upon it by either party. If the goods are resold by the vendor, after the contract of sale is rescinded, it is a sale of his own goods, not of the vendee's. If the contract is not rescinded, and the goods are resold, they are sold as the property of the vendee. Spencer, J. said, in *Sands* v. *Taylor,* (*supra,*) "There are no decisions in the books which

either establish or deny this rule; but it appears to me to be founded on principles dictated by good sense and justice." The vendor is said to be, by necessity, the mere agent or trustee to manage the property, and being thus constituted agent or trustee, he must either abandon the property, or take a course more to the advantage of the vendee, by selling it. The property sold, in that case, was perishable. Van Ness, J. said, "The article was perishable, and the interests of all parties required that the most should be made of it." Kent, Ch. J. said, "The usage in such cases, is to sell the article after due notice to the other party to take it, and that in default of doing it, the article will be sold." "It would be unreasonable to oblige the vendor to let the article perish on his hands, and run the risk of the solvency of the vendee."

In *Maclean* v. *Dunn*, (4 *Bing.* 722,) Best, Ch. J. said, "It is admitted that perishable articles may be resold. It is difficult to say what may be esteemed perishable articles and what not; but if articles are not perishable, price is, and may alter in a few days, or a few hours." "It is a practice, therefore, founded on good sense, to make a resale of a disputed article, and to hold the original contractor responsible for the difference. The practice itself affords some evidence of the law, and we ought not to oppose it except on the authority of decided cases." "We are anxious to confirm a rule consistent with convenience and law. It is most convenient that when a party refuses to take goods he has purchased, they should be resold, and that he should be liable for the loss, if any, upon the resale. The goods may become worse the longer they are kept; and, at all events, there is a risk of the price becoming lower."

It is not perhaps material, at this late day, to inquire whether the rule is founded upon any other basis than that of usage and convenience. The vendor never could sell and satisfy his lien for the price of the goods. (*Cross on Liens*, 47.) The usage probably had its origin in the stipulation

McEachron v. Randles.

for a resale, and the fact that an express contract was usually printed in the conditions of sales at auction, or in contracts entered into by the East India Company, (*Maclean* v. *Dunn, supra; Chitty on Contracts*, 431, ed. 1844.) It is sufficient that the rule has been established. The right however to resell goods, under the rule, when the contract is not rescinded, and when there is no express stipulation authorizing it in the contract, can only be exercised by the vendor after due notice to the vendee, of the time when and place where the resale will be made. This course was adopted in *Sands* v. *Taylor*, in which the rule was established; and in *Crooks* v. *Moore*, and *Maclean* v. *Dunn*. Property pledged as security for a debt can only be sold after the debtor has been called upon to redeem the pledge, and after due notice of the time and place of sale. (*Stearns* v. *Marsh*, 4 *Duer*, 227, 232.) It is quite as material for the interests of the vendee of chattels, who is to be charged with any deficiency which may arise upon a resale, that he should have notice of the time and place of the resale; and none the less reasonable and just, that he should have such notice. The plaintiff did not demand payment of the price of the property sold, nor did he aver or prove that he gave notice to the defendant that in case he did not pay the price or take the property the plaintiff would sell it and hold the defendant for any deficiency, or that he would sell it at all. To the plaintiff's question, "I want to know what you are going to do about those lambs?" the defendant replied, "you have kept them until the time is past; you may sell them or do what you please with them;" and the plaintiff rejoined, "if I knew you was going to serve me in this way, I would have sold them before." This was the substance of all the conversation, in the only interview between the parties after the time when the property was to have been paid for and taken by the defendant, and the time of the resale. The defendant objected to proof of what the plaintiff obtained on the resale, as irrelevant and immaterial; also

to proof of what it was worth to keep the property, for the same reasons.

Upon the plaintiff's case, as made by himself, he did not show any cause of action. Had he been allowed to give the proof which was objected to and rejected, it would not have helped his case. Under the circumstances, the language of the defendant could only be construed into a consent to abandon the contract, and the act of the plaintiff in reselling the property, as an assent on his part to a rescinding of the contract.

The third ground of appeal stated in the plaintiff's notice of appeal is insisted upon as sufficient to require a reversal of the judgment of the justice. It is in these words : " When the jury returned to render their verdict, no one appeared or answered for the plaintiff." Assuming the fact to be as stated, it is no ground of error. The statute does not require " that any one shall appear for the plaintiff on receiving the verdict." It declares, (1 *R. S.* 143, § 110, *5th ed.*) " Previous to receiving the verdict, the plaintiff shall be called." This was done by the justice, or at least it was not alleged as a ground of error that he was not called. The section then proceeds as follows : " If he, the plaintiff, *be absent*, and no one appear for him, the verdict shall not be received." To have made this point available as a ground of error, it should have been stated that the *plaintiff was absent* when the verdict was received, and no one appeared or answered for him. If the plaintiff was present when the jury delivered their verdict, as we must assume that he was, from the fact that the point was not taken ; and if being so present, he was called before the verdict was received, as we must also assume for the same reason ; *the fact that no one appeared for him or answered for him*, is no ground for not receiving the verdict. If he was present when he was called, and made no answer, the verdict was properly received. *Qui tacet consentire videtur.* This was held in *Oakley* v. *Van Horn*, (21 *Wend.* 306.) Cowen, J. says : " The statute is merely

directory, in respect to the ceremony of calling the plaintiff. The object is to ascertain whether he be present; and it is enough that he be *actually present*, and not objecting. *Non constat*, that he was desirous to have a nonsuit entered. If otherwise, he might have said so ; or have actually withdrawn, as in *Platt* v. *Storer*, (5 *John.* 346.)"

It is unnecessary to consider the other questions in this case. The judgment of the county court should be reversed and that of the justice affirmed.

WARREN GENERAL TERM, July 9, 1861. *Rosekrans, Potter* and *Bockes*, Justices.]