JACKSON S. SCHULTZ AND OTHERS *v.* EDSON BRADLEY.

Defendant, having agreed to purchase a certain number of hides of plaintiffs, at a fixed price, accepted a delivery, but afterwards alleged that a part of them were of an inferior quality to that contracted for, and requested plaintiffs to to take them back. Plaintiffs denied that the hides were inferior to the contract quality, but took them back as requested, and examined them, and having satisfied themselves that they were of the proper quality, tendered them again to the defendant, who refused to receive them.

*Held,* a sufficient part delivery to take the case out of the statute of frauds.

*Held further,* that plaintiffs, by taking back the hides, did not rescind the contract, or give an acquiescence to defendant's rejection of them amounting to a rescission, and that the hides being of the proper quality, they were entitled to recover damages for defendant's refusal to fulfil his contract.

In such a case, *Held,* that plaintiffs might sell the goods at private sale, and without notice to defendant; and, provided the sale was a judicious one, could thereafter recover from defendant the difference between that price and the contract price.

APPEAL by the defendants from a judgment entered on the verdict of a jury at trial term.

The action was brought to recover damages for a refusal to take and pay for certain goods.

The facts are as follows :

In December, 1864, an agreement was entered into by the parties to this action, for the sale and purchase of 10,000 sides of oak wax leather, memoranda of which agreement were signed and exchanged. By the terms of sale, 3,000 sides were to be delivered at once, and paid for in thirty days, the residue to be delivered as fast as finished, from 100 to 150 sides daily, commencing January 15, 1865.

After plaintiffs commenced the delivery of the 3,000 sides, defendant requested that 5,000 additional sides should be added to the contract, which was done by plaintiffs' writing the same on said memoranda of sale, in presence of the defendant.

On February 24th, 1865, the deliveries of leather by the plaintiffs amounted to 6,365 sides.

About this time a misunderstanding arose as to the quality of the leather, and time of delivery. No further deliveries were made until March 29th, 1865, when, from negotiations had, a new arrangement was made between the parties, whereby it was verbally agreed, that the whole number of hides to be sold and delivered should be reduced from 15,000 to 12,000, the limitation as to time waived, and additional facilities of payment offered.

The plaintiffs then resumed the delivery of said leather, and by the 8th of April, 1865, had delivered 5,635 sides, in addition to the 6,365 sides previously delivered, making the 12,000 called for by said new agreement.

On April 12th, 1865, defendant (by letter of that date) complained of the quality of the leather, and subsequently rejected the whole 5,635 sides, and notified the plaintiffs to take them away. This was done by the plaintiffs, without admitting the position of the defendant as to the quality of the articles so rejected. The said hides were taken to plaintiffs' store, reexamined, found by them to be good in all respects, and the same were again offered and retendered to the defendant, who refused to receive them. Shortly after the market fell, and the leather in question was, on the 5th of September, 1865, sold by the plaintiffs at 20 cents a foot. For the damages caused by such depreciation in value, and defendant's refusal to take, judgment was rendered for the plaintiffs for $9,649 46, from which this appeal is taken.

*Alvin C. Bradley*, for appellant.

I. Plaintiffs, by sending for and taking away the rejected hides, waived their right to maintain an action (*Lord* v. *Kinney*, 13 Johns. 219; *Healey* v. *Utley*, 1 Cow. 345; *Coon* v. *Reed*, 1 Hilt. 511; *Callins* v. *Brooks*, 20 How. Pr. 327; *Mallory* v. *Lord*, 29 Barb. 454; *Shindler* v. *Houston*, 1 N. Y. 261; *Rogers* v. *Phillips*, 40 Id. 519; *Sands* v. *Taylor*, 5 Johns. 395; *Bement* v. *Smith*, 15 Wend. 493; *McEachron* v. *Randalls*, 34 Barb. 301; *Pallen* v. *Le Roy*, 30 N. Y. 549).

II. The contract was void by the statute of frauds, and

defendant had a right to reject the hides (*Champion* v. *Plummer*, 5 Est. 240; 4 B. & P. 253, per Mansfield, C. J.; 3 Pars. on Cont. (5th ed.) 13, note (v); 1 Greenl. on Ev. § 268, n. (4); 2 Ph. Ev. ch. 7, p. 84, C. & H. 2d 4 Am. ed.; *Bailey* v. *Ogden*, 3 Johns. 399).

*William M. Evarts*, for respondents.

I. The statute of frauds does not apply to the transaction between the parties. The agreement was for the purchase of an article to be manufactured, and, therefore, not within the statute of frauds (*Mead*, v. *Cose*, 33 Barb. 202; *Donovan* v. *Willson*, 26 Id. 138; *Robertson* v. *Vaughn*, 5 Sand. 1; *Sewall* v. *Fitch*, 8 Cow. 215; *Crookshank* v. *Burrell*, 18 Johns. 58).

II. If the statute of frauds applies, there was a delivery and acceptance of a portion of the hides, which renders the contract valid (*Sale* v. *Darragh*, 2 Hilt. 184; *Boutwell* v. *O'Keefe*, 32 Barb. 434; *McKnight* v. *Dunlop*, 1 Seld. 537; *Sprague* v. *Blake*, 10 Wend. 61).

III. The sending for and taking away of the 5,635 sides,. neither did away with the acceptance of such as the defendant had previously accepted, nor did it amount to a rescission of the contract. It was done with the intent of re-examining the hides, to see if the defects complained of really existed. When it was found that the complaint was unfounded, the plaintiffs did all they could to restore the goods to the custody of the defendant (*Smith* v. *Lynes*, 5 N. Y. 41, 45).

IV. When defendant refused to receive the leather, plaintiffs had a right to sell it (*Sands* v. *Taylor*, 5 Johns. 395; *Bement* v. *Smith*, 15 Wend. 497; *Crooks* v. *Moore*, 1 Sandf. 297; 2 Pars. on Cont. 453; *McLean* v. *Dunn*, 4 Bing. 722; *Gerard* v. *Taggart*, 5 Serg. & R. 19); and no notice to defendant of time and place of sale was necessary (*Pollen* v. *Le Roy*, 30 N. Y. 549).

LARREMORE, J. (after stating the facts).—It will hardly be claimed that the contract in question is within the statute of frauds. It calls for the delivery of an article to be manufac-

tured (*Mead* v. *Case*, 33 Barb. 202, and cases there cited; *Don-ovan* v. *Willson*, 26 Barb. 138).

But even if this were not the case, there was a delivery of a portion of the hides, in pursuance of the verbal agreement of March 28th, 1865, on the day it was made, and the residue in a short time thereafter. The jury have found that there was an acceptance by the defendant, and such finding, upon the evidence offered, must be regarded as conclusive. The subsequent delivery and acceptance of the hides by the defendant was sufficient to take the case out of the statute (*McKnight* v. *Dunlop*, 5 N. Y. (1 Seld.) 537; *Sale* v. *Darragh*, 2 Hilt. 184; *Sprague* v. *Blake*, 20 Wend. 61).

The retaking of the property by the plaintiffs, for the purpose of re-examination as to its quality, was not a rescission of the contract, and the jury have found this to be the fact.

There can be no doubt of the plaintiffs' right to sell the property, after a refusal by defendant to receive it (*Sands* v. *Taylor*, 5 Johns. Rep. 395; *Bement* v. *Smith*, 15 Wend. 497; *Crooks* v. *Moore*, 1 Sand. 297; 2 Parsons on Cont. 453). There does not appear to have been any unfairness about the transaction. The sale was made on a rising market, in the regular course of business, and for full value, and no notice of the same to defendant was necessary (*Pollen* v. *Le Roy*, 30 N. Y. 549).

The case was fairly submitted to the jury, and the judgment entered on their verdict should be affirmed, with costs.

JOSEPH F. DALY, J.—It does not seem to me that there was any rescission of the contract of sale between the parties as to the 5,635 sides of leather in question. The defendant had no *right* to disaffirm the contract and reject the goods, since it appears that they were not inferior to the quality agreed to be furnished. The jury found this fact under the charge, and the evidence is sufficient to sustain the finding. The question, therefore, is, was there an agreement between the parties to rescind, or an acquiescence by the plaintiffs in defendant's rejection of the goods, amounting to rescission?

Schultz v. Bradley.

The evidence on the point is, that the plaintiffs. had always told the defendant to send back what was not right, to reject inferior leather, and they *would take it back;* that while the leather was in course of delivery, and under date of April 12th, the defendant wrote to the plaintiffs : " I have examined some of the wax leather sent in on the last bills, and I notify you thus early that if this is a sample of the lot, I will not receive the leather, but hold it subject to your order." On April 15th, the defendant again wrote to plaintiffs: " Of the 5,635 sides wax leather sent me, I have examined sufficient to satisfy me that the leather is not of the quality which you agreed to furnish me. I, therefore, reject the entire lot, and request you to take it away as early as possible." The plaintiff Schultz, who had been absent from the city, found these letters on his return. He wrote under date of April 21st, on behalf of plaintiffs, to the defendant : " We are in receipt of your two letters of the 12th and 15th. We are, of course, surprised at your statement. We do not and cannot admit the position you take. But, by your request, we will send and take the leather away. You will, therefore, please deliver the leather, or such portion as you reject, to our cartmen when they call." The plaintiffs sent to defendant's, got the leather, took it to their store, opened and examined it, found it good, and equal in all respects to the best they had manufactured, and tendered it back to defendant. On April 29th, they wrote to defendant, * * * " We have re-examined the leather referred to in your letters of the 12th and 15th of this month, and are satisfied of the incorrectness of your position, and we shall insist upon your receiving it according to the agreement. We now offer to return it to you. Please advise us by the bearer, or otherwise, if you will accept it." On May 1st, the defendant wrote to the plaintiffs, · * * *· " As to your examination of the leather rejected by me, and taken away by you, I am sure my course is correct, and shall be governed accordingly."

It cannot be claimed that the foregoing shows any agreement to rescind the contract of sale of the 5,635 sides. The essence of such an agreement is the same as of all agreements ;

the minds of the parties must meet, there must be perfect acquiescence; they must consent as fully to the canceling of their contract, as to the making of it originally. It will hardly be argued that the parties concurred when the letter of plaintiffs of the 21st April expressly says : " We do not and cannot admit the position you take ;" and it is certain that there is no evidence that plaintiffs admitted the defendant's rejection to be proper, or agreed to receive the leather back for that reason. What, then, was their object in retaking it? They had stipulated with defendant that he might reject what was of inferior quality, and they would take it back. It is clear that this agreement to take back was conditional upon the goods being of inferior quality. Pursuant to it, the defendant notifies his rejection of the whole 5,635 sides ; pursuant to it the plaintiffs take them back. Under the condition, it is the right of the plaintiffs to be satisfied that the rejection is according to the stipulation ; they examine, and find the leather good in all respects. If they have been tricked into taking it back, or if mistake on the part of defendant caused the rejection, are the plaintiffs without remedy? Clearly not, when the only act which can be construed against them—the taking back the leather—was conditional merely, pursuant to an agreement between them, and usage in their dealings as to rejection of goods. There was no unnecessary delay in the re-examination by plaintiffs; eight days for the examination of 5,635 sides cannot be deemed unreasonable, and it nowhere appears that the defendant was prejudiced by delay. If the question of intent in the retaking of the goods was a proper one for the jury, it was fully submitted to them, and they found in favor of plaintiffs.

The judgment should be affirmed.

ROBINSON, J. [*dissenting*]. Conceding that the agreement relating to the 5,635 sides of leather in question was not obnoxious to the provisions of the statute of frauds, the defendant was not liable for the damages which have been assessed against him for the assumed difference between the price he agreed to pay and that realized by the subsequent resale to Johnson and

Thompson, or upon any evidence establishing any basis for a recovery.

It clearly appears he rejected the leather as not of the quality called for by the contract, that with notice of such rejection, and in compliance with his request, plaintiffs sent by their carman and took the leather away. Their letter on this subject, in reply to those of the defendant rejecting the leather for alleged non-conformity to sample and requesting them to take it away, stated that they were surprised at his statements and did not admit the position he took, and added, " but by your request, *we will send and take the leather*. You will therefore please deliver the leather, or such portion as you reject, to our carmen when they call."

Five days after plaintiffs' carmen had taken away all the leather, they wrote defendant that they had re-examined it, and were satisfied of the incorrectness of his position, and insisted on his receiving it according to the agreement, and offered to return it to him.

In his reply, he claimed his course was correct, and stated he would be governed accordingly. Again, on the 8th of June following, they made tender of the same 5,635 sides, which was refused.

In their complaint, plaintiffs allege their resumption of the leather was *with the design* of examining said leather and ascertaining with certainty its quality. If so, they disclosed no such purpose nor in any way qualified their resumption of the goods, as rejected and in accordance with defendant's request, except by stating they *did not admit the position he took*, although they *did* just what he required.

The answer denied any such qualified resumption, and I cannot discover a *scintilla* of proof to sustain their assertion that the goods were merely taken for the purpose of re-examination. Such a position could only be sustained by evidence of some declaration made at the time, qualifying the character of their resumption, or upon some proof of a usage or course of dealing between the parties evincing such a *latent* intent.

None such was disclosed, nor is any reason suggested why, if a mere re-examination was intended, it could not have been

made before removal of the goods from defendant's warehouse, as had been done on other occasions. In the two other instances of previous rejection of such goods by the defendant, disclosed by the testimony, to wit, as to 135 sides returned in October, and a lot of 560 returned in January, the 135 and 140 (out of the 560) were sold to other parties, and 420, balance of the latter lot, were resold to defendant.

In most instances (four or five other times) where objections were made, plaintiffs were sent for, "Mr. Schultz would come down and make it right." Mr. Schultz testifies, "I told defendant when we gave him leather inferior to the contract, if he would reject it, we would take it." "I told him uniformly to send back what was not right." "I examined leather on two or three occasions in defendant's loft."

From these extracts from the evidence (which, so far as I can discover, are substantially all affecting this question of *latent* intent of the parties, as distinguished from the legal import of their acts and correspondence), there can be no pretense that the possession of this property was resumed for mere purpose of re-examination, either in pursuance of any express agreement or understanding, or as implied from well understood course of dealing between the parties.

The rejection of it as not conforming to sample, the acquiescence in and agreement with the request of the vendee to take it back (but not in his assertion that it did not conform to sample), the sending for it and resumption of possession without any intimation of any such intention were unequivocal acts of a complete resumption of the property for any general purpose of their own, whereby they were reinstated in absolute ownership, without prejudice to their right to claim they have made a tender of performance.

A vendor, on the unjustifiable refusal of the vendee to accept, has his election either to recognize the rejection and claim as damages the difference in his favor between the market price of the goods *at the time* of their rejection and that agreed to be paid for them, or he may assume an agency to sell them on account of the vendee. In the exercise of such agency he is only bound to use due care and diligence, and may, in making

a disposition of the goods, give notice to the vendee of the time and place of sale, and is relieved from responsibility in respect to any inadequacy of price obtained thereon, but without giving such notice he is only liable for the judicious exercise of his authority in making any sale.

But the notice to the vendee as to the character in which he intends to hold or deal with the property, presents a further consideration material to the rights of the parties beyond such as merely affects the measure of damages arising out of a resale of the goods.

The notice to the vendee of the intention to hold as his agent, affords him a "*locus pœnitentiæ*" and opportunity to provide against further contingencies, which would not exist if the vendor, upon such rejection, resumed ownership.

If no such notice be given, the retention or sale of the property by the vendor must, from these considerations, operate as an election to hold it as his own.

The decisions of our courts present several analogous cases, and clearly exhibit the law applicable to these facts.

In *Lord* v. *Kenny* (13 Johns. 219), plaintiff had agreed to sell defendant a horse, and received his note for the price. It was afterwards agreed that the purchaser might, within a reasonable time, return the horse, if in as good condition as when delivered, and receive back his note. Defendant accordingly delivered it back, and plaintiff received it without objection as to its condition, and gave back the note, but afterwards brought an action on the ground the horse was not returned in as good condition as when sold; but the court held that as the deterioration in the value was not on account of any secret injury, and as the plaintiff took back the horse and delivered up the note without objection or reservation as to the condition of the horse, he was concluded by that act, and the contract of sale was thereby rescinded.

In *Healy* v. *Utly* (1 Cow. 345), the vendee after delivery of the articles sold, returned them to the vendor, saying he could not pay for them, and the *vendor must do the best he could* with them. The vendor resold them, but for less than the original price. It was held, that acceptance of the articles by the vendor

was a complete rescission of the sale, and he could not be deemed the agent of the vendee in making the resale, or hold him for the difference.

In *Coon* v. *Reed* (1 Hilt. 511), the purchaser of a horse with warranty of soundness, after delivery but before payment, refused to complete his purchase, alleging the horse was lame. The seller refusing to take the horse back, and it was sent to a livery stable, from which it was taken by the seller two or three weeks afterwards. It was held, that notwithstanding such refusal, the subsequent taking possession of the horse constituted a rescission of the contract of sale, and no recovery could be had for the loss sustained by the failure of the purchaser to complete the contract. To the same effect is also *Collins* v. *Brooks* (in this Court), 20 How. Pr. 327.

The question as to the rights of the parties under the circumstances stated, were distinctly presented on the motion to dismiss the complaint, and exception was taken to the overruling of the objection to a recovery. The plaintiffs also made these 5,635 sides of leather their own by their sale to Johnson & Thompson, without any notice to defendant of their intention to hold or sell them on his account.

In *McEachron* v. *Randles* (34 Barb. 301), it was held that the right of the vendor to resell the goods on account of the purchaser, and recover of him the loss by the resale (where there was no express stipulation in the contract of sale, authorizing it) could only be exercised after due notice to him of the time and place of resale (p. 307).

The Court of Appeals, subsequently, in *Pollen* v. *LeRoy* (30 N. Y. 555), held that " the vendors had a right to dispose of the lead (the property sold) as soon as they could, with due regard to the interest of the vendees, and *after having given notice of their intention, and to hold the latter responsible for the difference* between the agreed price and the sum realized, together with all expenses necessarily incurred;" but further notice of the time and place of sale was held unnecessary, and *McEachron* v. *Randles*, as far as it so held, was expressly overruled.

The main proposition presented by these cases requiring

*notice* by the vendor, where he elects to hold goods on account of the vendee, was previously asserted in *Sands* v. *Taylor*, 5, Johns. 395; *Bement* v. *Smith*, 15 Wend. 493; *Crooks* v. *Moore*, 1 Sand. S. C. 297; *Mallory* v. *Lord*, 29 Barb. 465, and other cases.

In the absence of such notice and his consequent election to treat the goods as his own, his damages are confined to the difference between their market price on the day of performance and that agreed to be paid (*Dey* v. *Dox*, 9 Wend. 129; *Stanton* v. *Small*, 3 Sand. S. C. 230; *Dana* v. *Fiedler*, 12 N. Y. (2 Kern.), 41; *Orr* v. *Bigelow*, 14 N. Y. (4 Kern.), 556; Sedg. on Dam. 282).

This point was also distinctly presented as a ground for nonsuit, and the decision overruling it was excepted to.

The latter agreement between the parties for the delivery of 12,000 sides, under which the 5,635 in controversy were sent to and receipted for by the defendant, was not void under the statute of frauds. It is true, it originated in the written memoranda signed by the parties in 1864, somewhat in the form of "bo't and sold notes" for a sale of 10,000 sides at 28 cents per pound (3,000 to be delivered at once, at 30 days, and the balance as finished, say 100 to 150 daily), which were so imperfect in describing who were vendors or vendees, that they failed to express intelligently or with certainty any such agreement as the statute required (*Wright* v. *Weeks*, 25 N. Y. 153). This contract, then existing only in parol, was subsequently modified by enlarging it by 5,000 sides to be delivered the 15th of April, but such modified agreement, although reduced to writing, was only signed by plaintiffs. Afterwards and about February 24th, when but 4,000 sides had been delivered, the parties again by parol modified this latter agreement so as to reduce the total amount of leather to be bought and sold, to 12,000 sides. As applicable to this contract, 6,365 sides in all had been delivered prior to March 29th, which have been fully paid for. The controversy is, as to 5,635, the balance of the 12,000 sides which were delivered on and after March 29th and previous to April 15th, in pursuance and part performance of the subsisting modified parol agreement for the sale and delivery of 12,000 sides.

Although there was no sufficient writing to render it valid in its inception, as a sale of 12,000 sides, the delivery, acceptance and receipt of a part thereof (at least 2,365) and the payment therefor, satisfied the statute (2 R. S. 136, § 3, sub. 2 and 3); and if the claim for these 5,635 sides were otherwise maintainable, the objection taken under the statute of frauds would constitute no defense.

The acquiescence by the plaintiffs in defendant's request that they should take away the 5,635 sides ("without assenting to his position" that they did not conform to the sample), left them in a position to show that they had tendered performance according to the requirements of the contract, and, notwithstanding their subsequent sale of the property, they might recover from defendant damages for his refusal to accept it, estimated upon its inferior market value, when tendered and rejected, to that he had agreed to pay for it.

The case was, however, tried upon another theory, and with reference to such damages as resulted from the subsequent sale of the property to Johnson & Thompson, in September following.

No proof whatever was given of any difference between the market value of the property, when rejected and taken back, and the price agreed upon in the contract, and nothing but nominal damages could be allowed.

Under these views there was error in the submission to the jury of the several questions as to which there was no conflict of evidence:

1st. Whether the buyer had accepted the goods.

2d. Whether the plaintiffs had agreed to take the property back.

3d. Whether plaintiffs took back the property for examination.

4th. In the charge to them that the vendee must pay the difference between what the article afterwards sold for and the amount which, by the contract, he agreed to pay for it.

5th. And without adverting to the necessity of giving notice of an intention by the vendor to hold and sell the property on the vendee's account, and the charge that the vendee must pay the

difference between what the article afterwards sold for and the amount which, by the contract, he agreed to pay for it.

The verdict was evidently predicated upon no other evidence than a contract of the price obtained on the sale to Johnson & Thompson, in September following, with that agreed to be paid for fifteen days after delivery.

The judgment should, for these reasons, be reversed, and a new trial ordered, with costs to abide the event.

Judgment affirmed.