McMillan *v.* Saratoga and Washington Rail Road Co.

————•♦•————

McMILLAN, adm'x, &c. *vs.* THE SARATOGA AND WASHINGTON RAIL ROAD COMPANY.

Where, in an action against a rail road company, the complaint, after stating that the defendants were an organized company and the owners of the road, and were running it, averred that on, &c. while they were so running the road, the plaintiff's intestate was in the employ of the defendants, as an engineer upon their locomotive, while it was in their use and service; *Held* that this was a sufficient allegation to show that the relation of master and servant existed between the parties.

But no special contract between the principal and agent is to be inferred from such an allegation.

A servant, to be entitled to recover of his principal for an injury happening to him in the course of his service, through defects in the machinery &c. used in the discharge of his duties, must prove actual notice to his principal of the defects. And in order to be able to prove notice, he must allege it in his complaint.

Thus where a complaint alleged that W. S. M., the plaintiff's intestate, was in the defendants' employ as engineer upon a locomotive used and running upon their rail road; that it was the duty of the defendants to provide a good, safe and secure locomotive &c., and a good, safe and secure track, and to keep the same in good repair, and to build, maintain and keep in good repair all necessary bridges, fences and cattle-guards, but that they, not regarding their duty, wrongfully and negligently provided, used and suffered to be used, an unsafe, defective and insecure locomotive, and failed and refused to provide a good, safe and secure track and road, or to keep the road in good repair, and neglected to build, maintain and keep in good repair all necessary bridges, fences and cattle-guards; that through a defect in the fence which it was the duty of the defendants to maintain and keep in good repair, a horse got upon the track from an adjoining lot, without any fault of W. S. M., and in consequence of the defendants' neglect to provide proper cattle-guards, ran over the road until he came to a bridge, where the locomotive struck the horse; and the locomotive was thrown off the track and W. S. M. was killed; *it was*

McMillan *v.* Saratoga and Washington Rail Road Co.

*held*, on demurrer, that the complaint was defective, in not averring *actual notice* to the defendants, of the defects occasioning the injury, or some of them.

It is the duty of an engineer, employed in running a locomotive upon a rail road, and it is confided to him by his employers, to guard against all accidents liable to happen by the escape of horses or other animals, upon the track, through a defect of fences, or otherwise. Hence he is bound to make known to the rail road company any defects of that nature which may exist. So in respect to any defects in the locomotive. And for not making them known he is responsible to the public as well as the company.

He may require special indemnity against all risks, or he may give notice to the company and throw the risk upon them.

THIS was an appeal from an order made at a special term, sustaining a demurrer to the complaint. That pleading averred that the defendants were, at the time of the injury complained of, a corporation duly organized, &c. That they were, at the said time, the owners and operators of a rail road, running from Saratoga Springs to Whitehall, and that they ran upon said road a certain locomotive. That on the 2d day of December, 1853, W. C. McMillan, the plaintiff's intestate, was in the defendants' employ as engineer, upon said locomotive, " and it then and there became and was the duty of the defendants to provide a good, safe and secure locomotive, with good, safe and secure machinery, and to provide a good, safe and secure track," and to keep the same in good repair, and to build, maintain and keep in good repair all necessary bridges, and also all fences on both sides of their road, and sufficient cattle-guards, at all road and farm crossings. The complaint then averred that the defendants, not regarding their said duty, " *wrongfully* conducted themselves so carelessly, negligently and unskillfully in that behalf, that by and through such wrongful carelessness, negligence and unskillfulness and default of the defendants they *provided, used and suffered to be used*, an unsafe, defective and insecure locomotive on the said road, and wholly failed and refused to provide a good, safe and secure track and road, and neglected to keep their said road in good repair, and neglected to build, maintain and keep in good repair all necessary bridges, and also the fences, on both sides of the road,

and neglected to maintain cattle-guards at all road and farm crossings.

The complaint then further averred that on the 2d of December, 1853, while the said locomotive was being run by the plaintiff's intestate *in the capacity of engineer for the defendants, and in their employ,* a horse that was in one of the lots contiguous to and adjoining said rail road, through and in consequence of a defect in the fence, between said lot and the rail road, *which it was the duty of the defendants to maintain and keep in good repair,* escaped into and upon the track of the road, and while on the road, without any fault of the said W. S. McMillan as such engineer or otherwise, was run down by said locomotive upon which the said W. S. McMillan then was; and that in consequence of the neglect of the said defendants *to provide proper cattle-guards* upon and over said road at the place aforesaid, the said horse was enabled to run over said road, until he reached a bridge over which the road passed, where said locomotive struck said horse. That in consequence of said defendants neglecting to maintain and keep said bridge in good repair, the same was unable to withstand the shock occasioned by the collision, and the horse and locomotive were thrown off the track on said bridge and the locomotive entirely destroyed; that the cow-catcher of the locomotive was out of repair, as were the track and road also, owing to the negligence of said defendants, and that the locomotive was precipitated into the canal, and in falling struck the plaintiff's intestate and killed him. The complaint then averred that the plaintiff was the wife of the engineer and had been duly constituted administratrix, since his death, and brought her action under the statute, to recover her damages.

The defendants demurred to the complaint, and stated several grounds of demurrer, which are noticed, so far as is necessary, in the opinion of the court.

*A. Pond* and *C. S. Lester,* for the plaintiff.

*W. L. F. Warren,* for the defendants.

*By the Court,* C. L. ALLEN, J.   The first ground upon which the demurrer in this case is predicated is, that the complaint does not set forth facts sufficient to constitute a cause of action.   The complaint, after stating that the defendants were an organized company and the owners of the road, and were running it, avers that on the 2d day of December, 1853, while they were so running the road, the plaintiff's intestate was in the employ of the defendants as an *engineer* upon their locomotive, *while it was in their use and service on that day.*   This is a sufficient allegation to show that the relation of master and servant existed between the parties.   At all events it shows that McMillan was lawfully on the road on that occasion, at the request of the defendants, and as their servant actually engaged in conducting the locomotive at the time of the happening of the injury complained of.   The duty is created by law, and the general allegation, I think, is sufficient.   It may be said, it is true, that this is the rule as between the company and third persons, but that a different rule prevails as between master and servant, where particular accidents or mishaps may be guarded against by special contract.   (*Story on Agency,* 453, *e.*   3 *Seld.* 498.) But in the view I have taken of another point it will not be necessary further to consider this position, at the present time. No *special contract,* however, between the principal and agent is to be inferred from such an allegation.

The great question is, whether the plaintiff should have averred *actual notice* to the defendants, of the defects complained of, or some of them.   In *Keegan* v. *The Western Rail Road Corporation,* (4 *Seld.* 175,) Ch. J. Ruggles, in delivering the opinion of the court of appeals, says that " the cases in which it has been held that a principal is not liable to one agent or servant for an injury sustained by him in consequence of the misfeasance or negligence of another agent or servant of the same principal while engaged in the same general business, were not applicable to the case then under consideration.   That they were only applicable where the injury complained of happened without any actual fault or misconduct of the company, either in the act which caused the injury or in the selection or

employment of the agent by whose fault it did happen. That whenever the injury results from the actual *negligence or misfeasance* of the principal he is liable, as well in the case of one of his servants as in any other." He further remarks that in the case of third persons, the actual fault of the agent is imputed to the principal on grounds of public policy, but that it was unnecessary to dwell upon the reasons, because the referee had found, as matter of fact, that the injury resulted directly from the negligence or misconduct of the defendants themselves, in continuing to use the engine having a defective and dangerous boiler, *after notice of its dangerous condition.* It will be perceived that the court lay great stress, and seem to base their opinion, upon the fact found, that notice had been given to the company of the defects in the boiler. The referee reported that during the two months preceding the explosion the engineer of the locomotive had reported to the defendants, on five or six different occasions, the defective condition of the boiler, and that those defects were entered on the books of the defendants kept for that purpose. Upon this state of facts, it was very properly urged and insisted, upon the argument, that the defendants having persisted in running the engine under circumstances showing an utter blindness to every thing except their own pecuniary profit, were *guilty not only of negligence* but *intentional wrong ;* it was an act dangerous to human life, and knowingly done. *Knowledge* was considered one of the essential elements necessary to maintain the action. And why has this difference in the rule between strangers and servants obtained, from the earliest cases down? The reason, says *Story,* in his treatise on *Agency,* § 453, *d. and e.,* is that "the mere relation of master and servant, or principal and agent, creates no contract, and therefore no duty on the part of the principal. In such cases the servant takes upon himself the hazard of an injury which may arise in the course of his business or employment. The master is no doubt bound to provide for the safety of his servant in the course of his employment, to the best of his judgment, information and belief. But the servant is not bound to risk his safety in the service of his

master, and may if he thinks fit, decline any service in which he may have reason to apprehend injury to himself. And in most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it, as the master."

These remarks I consider as peculiarly appropriate to the present case. The plaintiff's intestate was the engineer upon the very locomotive which contained the defects complained of. It was his duty to have made known the defects to the company, as in the case of *Keegan* v. *The Western Rail Road Corporation.* He was responsible as well to the public as the company, for not making them known. It was his duty, and it was confided to him by his employers, to guard against all accidents liable to happen by the escape of horses or other animals upon the track, through the defect of fences or otherwise. He would be *more likely* to know of occasional defects in fences or cattle-guards or bridges than the company or their officers elsewhere located. He was bound at all times to exercise all diligence and caution against the happening of accidents, and to thus protect himself as well as his passengers and the property intrusted to his care. He had the knowledge, or the means of knowledge, within his own power. He might have required special indemnity against all risks, or he might have given notice to the company and have thrown the risk upon them. (3 *Mees. & Wels.* 1. *Story on Agency,* 451 *d, e. Parsons on Contracts,* 528.) "The master," says the latter, "is not responsible for an accident happening in the course of his service, unless the master knew that it exposed the servant to peculiar danger, and the servant did not." (*And see Add. on Cont.* 744.)

The servant, then, to be entitled to recover, as seems to be established by all the cases, must prove actual notice to the principal of the defects complained of as causing the injury, or some of them. And in order to be able to prove notice, he must allege it in his complaint. It is argued that no notice was averred in the case of *Keegan.* But the evidence was received by the referee without objection. And the question did

not arise in the court of appeals, whether it was necessary to aver that fact or not. If the objection had been taken at the proper time the referee must have ruled it necessary, or have violated a well known rule of pleading, that it is necessary to aver whatever is material or necessary to prove.

It is further insisted that the defendants in this case must have known whether they *built* the fences or not, and that they are charged with *not building*. The plaintiff, however, avers that the horse escaped on to the road in consequence of a *defect* in the fence between a certain lot and the rail road, which it was the duty of the defendants to maintain and keep in repair; they admitting that the fence had been built but had become defective and out of repair. The same remark is applicable as to the cattle-guards, and the bridge. All which defects, as before remarked, were more likely to have been known to the engineer than to the company, particularly the insufficiency of the *cow-catcher* attached to the locomotive, to permit which he might be deemed to have been grossly negligent himself. Without further pursuing this subject, I am satisfied that the judge was right at special term in sustaining the demurrer, and I am for affirming the order, with $10 costs.

Order affirmed.

[Schenectady General Term, May 7, 1855. *C. L. Allen, Bockes* and *James*, Justices.]