MARY BAULEC, Administratrix, etc., of THOMAS HAMMOND, deceased, Respondent, v. THE NEW YORK AND HARLEM RAILROAD COMPANY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, MARCH, 1872.)

In an action against a railroad company, for negligently causing the death of an employe, the claim to recover was founded upon the alleged incompetency of M., a switch tender, and fellow-employe of the deceased, by whose negligence, in misplacing a switch, it was alleged, the accident had occurred which occasioned the death; and it was claimed that the defendant had retained M. in its employ with knowledge of his unfitness as he had been responsible for a similar accident which had happened at the same place.

*Held*, the evidence justifying an inference that M. had misplaced the switch, that an offer by the defendant to show that the switch had probably been changed by some one in M.'s absence, was improperly rejected.

*Held, also*, that evidence to show that, after the previous accident the person having charge of defendant's track, who placed the switches and

Baulec *v.* The New York and Harlem Railroad Company.

employed the switch tenders, investigated the circumstances of that accident and reported thereon to defendant's superintendent, and was told by him to retain M. in the defendant's employ was improperly excluded.

So, also, that such person reported to the company, after such investigation, that he found M. free from negligence respecting the first accident.

The rule in regard to the liability of employers to their employes for negligence in retaining incompetent fellow-employes, of whose incompetency they know or should know, discussed, and its limits explained, per BALCOM, J.

THIS action was tried at the Albany Circuit, in November, 1871, where the jury rendered a verdict in favor of the plaintiff for $3,000 damages, upon a complaint that the defendant had caused the death of Thomas Hammond, the plaintiff's intestate, by wrongful act, neglect or default.

The deceased was an employe of the defendant at the time, and was then acting as fireman upon the locomotive on a train of the defendant's cars at a point where the defendant's road and the New York and New Haven railroad come together, in Westchester county. The train was going toward the city of New York, when the locomotive on which Hammond acted as fireman was thrown from the track, by reason of a misplaced switch, or by reason of a wrong signal as to the situation of the switch, and Hammond was killed.

The defendant made a motion for a new trial, on the minutes of the court, which was denied. Judgment was then entered, on the verdict, against them, and they appealed from the judgment, and from the order denying their motion for a new trial, to the General Term of this court.

*Esek Cowen*, for the respondent.

*Aldace F. Walker*, for the appellant.

Present — MILLER, P. J., POTTER and BALCOM, JJ.

By the Court — BALCOM, J.   The verdict, in this action, was recovered by the plaintiff, on the ground that Hammond lost his life by the negligence of a switch tender, whom the

defendant retained in his employment after he knew he was careless and incompetent for such service.  Was the evidence sufficient to sustain this proposition ?  Or did the judge who presided on the trial make any erroneous ruling to the prejudice cf the defendant ?  The locomotive, on which Hammond was fireman, was running toward New York city on the defendant's railroad, and was thrown from the track of that road, at about half-past eight o'clock in the evening, in Westchester county, where the New York and New Haven railroad unites with that track, going toward New York city.  The locomotive was tipped over and Hammond was killed.  The switch, at that junction of the two railroads, was set right for trains running on the New York and New Haven road; but the signal there, to show approaching engineers the situation of the switch, indicated that the switch was set s ⸱ that trains on the defendant's road could pass the junctior ⸰  And the engineer, being deceived by the signal, did not sto ⸱ his train, and his locomotive was thrown off the track, by th ⸱ switch being wrongly set, and Hammond was killed.  The evidence was sufficient to justify the inference that the switch was wrongly placed by Patrick McGerty, who had charge of it; but the judge rejected the defendant's offer to show that it was probable that the switch had been changed by somebody else, in the absence of McGerty.  To that ruling the defendant's counsel excepted.  And I am of the opinion, the learned judge ci red in rejecting that offer.  It is clear that the action cannot be sustained, unless Hammond was killed by reason of the carelessness of McGerty.  The case was tried on that theory; and by the plaintiff endeavoring to prove, and proving to the satisfaction of the judge and jury, that the defendant was guilty of negligence and wrong, by keeping McGerty in his employ, as switch tender at that switch, after an accident there that occurred previous to the killing of Hammond.  It was, therefore, material for the defendant to prove that McGerty was free from the alleged negligence that caused Hammond's death.  He might not have been careless

if the switch was changed by some other person, after he had set it right for trains on the defendant's road.

The ground for charging the defendant with wrong, by keeping or having McGerty in their service, as a switchman, when Hammond was killed, consisted in the fact that, six or seven months before that time, while McGerty had charge of the switch where Hammond lost his life, a locomotive that was drawing a freight train from New Haven toward New York city, ran off the track there one night in consequence of McGerty misplacing this switch. The switch and signal there had been rightly placed by McGerty before that train came in sight of him. When he saw it approaching, he thought it was on the defendant's track, and therefore he changed the switch to that track. When he discovered that such train was coming on the New York and New Haven track, it was too late for him to change the switch back to that track, and the locomotive hitched to that train ran off the track, at the switch, a distance of about the length of one of the iron rails there. That train was going slow, and very little damage was done by the locomotive, that was drawing it, running off the track. There was evidence that trains on the New Haven and New York road usually stopped before passing that switch, and that McGerty supposed the last mentioned train was on the defendant's track, because it did not stop, and therefore he changed the switch to that track. There was, also, evidence that the engineers on such trains generally blew the whistles on their locomotives when approaching that switch, which was not done on the locomotive that ran off while drawing the train from New Haven.

McGerty was sworn as a witness for the plaintiff, on the trial of this action, and testified that he had been in the defendant's service eight or nine years; that he had been familiar with the switch and junction of the two railroads, where the occurrence in question happened, since the junction was put there; that he had had charge of this switch between nineteen and twenty months before Hammond was killed;

that he had been away from the switch more than a year, at work repairing defendant's road as a track laborer; but had been back tending this switch nine or ten months, immediately preceding the killing of Hammond. McGerty had previously been a switchman at another place on the defendant's road for about five months.

There was nothing in McGerty's evidence, or that given by any other witness, to show that he was not a laborer of ordinary intelligence; or that his habits were not good; or that he was not attentive to his duties and industrious. And I am not prepared to say that the evidence was sufficient to establish that the defendant was guilty of negligence, for keeping McGerty in his employ as a switch-tender, where Hammond was killed, after the first accident at that place, which occurred six or seven months before that time. I do not think intelligent men, of good habits, who are engineers, or brakemen, or switchmen, on railroads, must, invariably, be discharged by the companies, in whose employment they are, for the first error or act of negligence such employes commit, or that such companies will be liable for their second error, or negligent act, to all other servants of such companies, when the latter sustain damages by reason of such a second error or negligent act. If such a rule is to be established by the courts, the situations of employes on railroads will be very precarious; and no railroad company can safely retain an employe in their service after he has committed a single error, or act of negligence, however honest, or intelligent or faithful he may be, or good his habits are. I cannot subscribe to such a rule, for the reason that it would be unjust and impolitic. But I will not say that, under certain circumstances, a single, careless act may not evince such incompetency or recklessness, in an employe, as to call for his immediate dismissal by his employer.

The defendant called Artemas W. Eggleston as a witness, who had charge of his railroad track, placed switches and employed his switch-tenders. He testified that he had known McGerty twelve years, during which time he had been in the

employment of the defendant in different capacities, and " ever since he was a young man ;" that neither he nor the defendant ever knew anything against McGerty, except these two accidents, in regard to his capability for the position of switchman; that, after the first accident, he saw McGerty; got what facts he could of him respecting it; made inquiries touching it; looked over the ground where it occurred, and reported, respecting it, to defendant's superintendent, who told him to retain McGerty. The defendant offered to show that, from Eggleston's investigation, he was satisfied that, when the first accident happened, the New Haven train did not stop, and so reported; which offer was objected to, and the judge excluded it; to which ruling the defendant's counsel excepted. The defendant's counsel offered to show that Eggleston reported to the company that he found McGerty free from negligence respecting the first accident. The judge rejected it, and the defendant's counsel excepted.

I am of the opinion the learned judge erred in rejecting these two offers of the defendant. The evidence that was rejected might have shown, if it had been received, that the defendant's superintendent had information that justified him, or, at least, that tended to justify him, in directing Eggleston to retain McGerty in the defendant's service as a switchman. It might have established, or have tended to establish, that the defendant was not guilty of negligence in keeping McGerty in their service as a switchman, where Hammond was killed, down to the time of that occurrence. And I hold, if that evidence had been received, it might, with the other evidence in the case, have satisfactorily established that the defendant was not guilty of any culpable negligence in retaining McGerty in their service as switchman, where Hammond was killed, and that the plaintiff could not maintain this action. We have the right, on review, to assume that the evidence offered would have been given; and the test is, if such evidence had been received, would it have been material? If so, its rejection was error.

This conclusion, or holding, is not in conflict with the rule

that a master, who knowingly employs an incompetent servant, or keeps such an one in his service, after notice of his incompetency, is liable for damages, resulting from his negligence, to other servants engaged in the same business. This rule is applicable where a switchman is an habitual drunkard, and such fact is known, or ought to be known, to the corporation, and the injury results from his intoxication. (*Gilman* v. *Eastern Railroad Corporation*, 10 Allen's Reps., 233.) In *Keegan* v. *The Western Railroad Company* (4 Selden, 175), the boiler was defective and dangerous, and its condition in that respect was and had for some time been known to the defendants by the reports of the engineer, made on five or six different occasions, which were entered on the books of the defendants kept for that purpose ; and the defendants were held liable for damages that one of their servants sustained by the explosion of the boiler. The rule was laid down in *Ryan* v. *Fowler* (24 N. Y. Reps., 410), " that the principal is responsible for injuries to his employes from his personal negligence or misfeasance." (See *McMillan* v. *The Saratoga and Washington Railroad Company*, 20 Barb., 449 ; *Wright* v. *New York Central Railroad Company*, 25 N. Y. Reps., 562.)

All that the defendants were bound to do, after the first accident happened at the switch in charge of McGerty, so far as Hammond's rights were concerned, was to exercise ordinary care and diligence in investigating as to the cause of that accident and the carelessness and competency of McGerty; and if, by such an investigation, the facts ascertained, were such as would justify a competent railroad superintendent in retaining McGerty in the capacity of switch-tender, the defendants were not guilty of culpable negligence in this case.

There are other questions in the case which I have not examined.

For the reasons I have assigned, I am of the opinion the order denying the defendant's motion for a new trial, and

.he judgment in the action, should be reversed and a new trial granted, costs to abide the event.

MILLER, P. J., and POTTER, J., concurred

New trial granted.