Baulec *v.* New York and Harlem Railroad Company.

———————

MARY BAULEC, administratrix, &c., *vs.* THE NEW YORK AND HARLEM RAILROAD COMPANY.

A locomotive upon the defendant's railroad was thrown off the track, by·reason of a switch being misplaced, and the engineer killed. In an action brought by his administratrix, against the company, to recover damages on the ground that the death of. the engineer was caused by the negligence of the switch-tender, whom the defendant ·retained in its employ after it knew that he was careless and incompetent; *Held* that after evidence had been given, sufficient to justify the inference that the switch was wrongly placed by the switchman, it was error to reject the defendant's offer to show, that it was probable the switch had been changed by some one else, in the absence of the switchman.

And it appearing from the evidence, that the misplacing of a switch, by the same switchman, had çaused an accident, on a former occasion, notwithstanding which, the defendant had retained the switchman in its employ; *Held* that the defendant should have been allowed to prove that after the previous accident, an investigation was made, by a track-master, who reported to the company· that the switchman was free from negligence, in respect to that accident. ·

Intelligent men, of good habits, who are engineers, or brakekmen, or switch-men on railroads, are not required to be invariably discharged by their employers for the first error or act of negligence, such employees commit; nor will railroad companies necessarily be liable for a second error or negligent act of a servant, to all other'servants of such companies, when the latter sustain damages by reason thereof. *Per* BALCOM, J.

APPEAL, by the defendant, from a judgment entered on a verdict, and from an order refusing to grant a new trial.

The action was brought by the plaintiff, as administratrix of Thomas Hammond, deceased, against the defend-

ant for negligence in causing the death of her intestate. The deceased, at the time of his death, was in the defendant's employ, and the accident which caused his death was due to the negligence of another servant of the company in misplacing a switch. This servant (McGerty,) it was claimed by the plaintiff, was known to the defendant as a negligent person, whose carelessness had caused a former accident. The facts are stated in the opinion.

The action was tried before a jury, at the circuit, who found a verdict in favor of the plaintiff, for $3000.

*A. F. Wallace,* for the appellant.

*E. Cowen,* for the respondent.

*By the Court,* BALCOM, J. The verdict in this action was recovered by the plaintiff on the ground that Hammond lost his life by the negligence of a switch-tender, whom the defendant retained in its employment after it knew he was careless and incompetent for such service. Was the evidence sufficient to sustain this proposition ? Or did the judge who presided on the trial, make any erroneous ruling to the prejudice of the defendant ?

The locomotive on which Hammond was fireman was running towards New York city, on the defendant's railroad, and was thrown from the track of that road, at about half past eight o'clock in the evening, in Westchester county, where the New York and New Haven railroad unites with the track going towards New York city. The locomotive was tipped over, and Hammond was killed. The switch, at the junction of the two railroads, was set right for trains running on the New York and New Haven road ; but the signal there, to show the approaching engineers the situation of the switch, indicated that the switch was set so that trains on the defendant's road could pass the junction. And the engineer, being deceived by

Baulec *v.* New York and Harlem Railroad Company.

the signal, did not stop his train, and his locomotive was thrown off the track by the switch being wrongly set. The evidence was sufficient to justify the inference that the switch was wrongly placed by Patrick McGerty, who had charge of it; but the judge rejected the defendant's offer to show that it was probable the switch had been changed by somebody else, in the absence of McGerty. To that ruling, the defendant's counsel excepted.

I am of the opinion the learned judge erred in rejecting that offer. It is clear that the action cannot be sustained unless Hammond was killed by reason of the carelessness of McGerty. The case was tried on that theory; the plaintiff endeavoring to prove, and proving, to the satisfaction of the judge and jury, that the defendant was guilty of negligence and wrong by keeping McGerty in its employ, as switch-tender at that switch, after an accident had occurred there previous to the killing of Hammond. It was therefore material for the defendant to prove that McGerty was free from the alleged negligence that caused Hammond's death. He might not have been careless, if the switch was changed by some other person after he had set it right for trains on the defendant's road.

The ground for charging the defendant with wrong in keeping or having McGerty in its service as a switchman, when Hammond was killed, consisted in the fact that six or seven months before that time, while McGerty had charge of the switch where Hammond lost his life, a locomotive that was drawing a freight train from New Haven towards New York city, ran off the track there, one night, in consequence of McGerty misplacing this switch. The switch and signal there, had been rightly placed by McGerty, before that train had come in sight of him. When he saw it approaching, he thought it was on the defendant's track, and therefore he changed the switch to that track. When he discovered that such train was com-

ing on the New York and New Haven track, it was too late for him to change the switch back to that track,, and the locomotive hitched to that train ran off the track, at the switch, a distance of about the length of one of the iron rails there. That train was going slowly, and very little damage was done by the locomotive, that was drawing it, running off the track. There was evidence that trains on the New Haven and New York road usually stopped before passing that switch, and that McGerty supposed the last mentioned train was on the defendant's track, because it did not stop, and, therefore, he changed the switch to that track. There was also evidence that the engineers on such trains generally blew the whistles on their locomotives when approaching that switch, which was not done on the locomotive that ran off while drawing the train from New Haven.

McGerty was sworn as a witness for the plaintiff, on the trial of this action, and testified that he had been in the defendant's service eight or nine years ; that he had been familiar with the switch and junction of the two railroads where the occurrence in question happened, since the junction was put there; that he had had charge of this switch between nineteen and twenty months before Hammond was killed ; that he had been away from the switch more than a year, repairing the defendant's road, as a track laborer; but had been back, tending this switch, nine or ten months immediately preceding the killing of Hammond. McGerty had previously been a switchman at another place on the defendant's road, about five months.

There was nothing in McGerty's evidence, or that given by any other witness, to show that he was not a laborer of ordinary intelligence ; or that his habits were not good ; or that he was not attentive to his duties, and industrious. And I am not prepared to say that the evidence was sufficient to establish that the defendant was

guilty of negligence, for keeping McGerty in its employ as a switch-tender, at the place where Hammond was killed, after the first accident at that place, which occurred six or seven months before that time. I do not think intelligent men of good habits, who are engineers, or brakemen, or switchmen on railroads must inevitably be discharged by the companies in whose employment they are, for the first error or act of negligence such employees commit; or that such companies will be liable for their second error or negligent act, to all other servants of such companies, when the latter sustain damages by reason of such a second error or negligent act. If such a rule is to be established by the courts, the situations of employees on railroads will be very precarious; and no railroad company can safely retain an employee in its service after he has committed a single error, or act of negligence, however honest, or intelligent, or faithful he may be, or however good his habits are. I cannot subscribe to such a rule, for the reason that it would be unjust and impolitic. But I will not say that under certain circumstances, a single careless act may not evince such incompetency or recklessness, in an employee, as to call for his immediate dismissal by his employer.

The defendant called Artemus W. Eggleston as a witness, who had charge of its railroad track, placed switches, and employed its switch-tenders. He testified that he had known McGerty twelve years, during which time he had been "in the employment of the defendant, in different capacities," and "ever since he was a young man." That neither he nor the defendant ever knew any thing against McGerty, except these two accidents, in regard to his capability for the position of switch-man; that after the first accident, he saw McGerty; got what facts he could of him respecting it; made inquiries touching it; looked over the ground where it occurred, and reported respecting it to the defendant's superintendent, who told

him to retain McGerty. The defendant offered to show that from Eggleston's investigation, he was satisfied that at the place where the first accident happened, the New Haven train did not stop. This offer was objected to, and the judge excluded the evidence; to which ruling the defendant's counsel excepted. The defendant's counsel offered to show that Eggleston reported to the company that he found McGerty free from negligence, respecting the first accident. The judge rejected the evidence, and the defendant's counsel excepted.

I am of opinion the learned judge erred in rejecting these two offers of the defendant. The evidence that was rejected might have shown, if it had been received, that the defendant's superintendent had information that justified him, or at least that tended to justify him, in directing Eggleston to retain McGerty in the defendant's service as a switchman. It might have established, or tended to establish that the defendant was not guilty of negligence in keeping McGerty in its service as a switchman, at the place where Hammond was killed, down to the time of that occurrence. And I hold, that, if that evidence had been received, it might, with the other evidence in the case, have satisfactorily established that the defendant was not guilty of any culpable negligence in retaining McGerty in its service as switchman where Hammond was killed, and that the plaintiff could not maintain this action. We have the right, on review, to assume that the evidence offered would have been given; and the test is, if such evidence had been received, would it have been material? If so, its rejection is an error.

This conclusion or holding is not in conflict with the rule that a master who knowingly employs an incompetent servant, or keeps such an one in his service after notice of his incompetency, is liable for damages resulting from his negligence, to other servants employed in the same business. This rule is applicable when a switch-

man is a habitual drunkard, and such fact is known, or ought to be known, to the corporation, and the injury results from his intoxication. (*Gilman* v. *Eastern Railroad Corporation*, 10 *Allen*, 233.) In *Keegan* v. *Western R. R. Co.*, (8 *N. Y.* 175,) the boiler was defective and dangerous, and its condition in that respect was, and for some time had been, known to the defendant by the reports of the engineer, made on five or six different occasions, which were entered on the books of the defendant, kept for that purpose. And the defendant was held liable for damages that one of their servants sustained by the explosion of the boiler. The rule was laid down in *Ryan* v. *Fowler*, 24 *N. Y.* 410,) "that the principal is responsible for injuries to his employees from his personal negligence or misfeasance." (*See McMillan* v. *Saratoga and Washington R. R. Co.*, 20 *Barb.* 449; *Wright* v. *N. Y. Central R. R. Co.*, 25 *N. Y.* 562.)

All that the defendant was bound to do, after the first accident happened at the switch in charge of McGerty, so far as Hammond's rights were concerned, was to exercise ordinary care and diligence in investigating as to the cause of that accident, and the carelessness and competency of McGerty; and if, by such an investigation, the facts ascertained were such as would justify a competent railroad superintendent in retaining McGerty in the capacity of switch-tender, the defendant was not guilty of culpable negligence in this case.

There are other questions in this case, which I have not examined.

For the reasons I have assigned, I am of the opinion that the order denying the defendant's motion for a new trial, and the judgment in the action, should be reversed, and a new trial granted; costs to abide the event.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Miller*, P. J., and *P. Potter* and *Balcom*, Justices.]