HEALY *against* UTLY.

ERROR from the Court of Common Pleas of *Franklin County.* The action in the Court below, was assumpsit, by *Utly* against *Healy,* upon a special agreement by *Healy,* to purchase certain ash oars of *Utly.* Plea, the general issue. The cause was tried on the 10*th* day of *October,* 1822, and a verdict found for the plaintiff below, for $63,69, upon which the Court below rendered judgment with costs. A bill of exceptions was taken at the trial, which was in substance as follows :

On the trial, *Samuel P. Nims* was sworn, as a witness for the plaintiff, and testified that, in *August,* 1819, one *Spotswood* made a contract with *Utly,* to purchase all the oars which he, *Utly,* could procure before *Spotswood's* raft, then lying in *Salmon River,* should arrive at the *Coteau de Lac,* about thirty miles below ; that the price agreed upon per foot he did not recollect ; that the oars were to be delivered at the *Coteau de Lac,* in time not to impede the progress of the raft ; that the witness and *Utly* started immediately, and went down the river *St. Lawrence,* and procured and brought to the *Coteau de Lac,* the next day, at night, *Utly's* oars ; that *Spotswood* then objected to receive them, on account of their not coming in time ; that *Spotswood's* raft then lay at the *Coteau de Lac,* and lay there all the next day, as the witness thinks ; that it was hindered from going, on account of adverse winds ; that the next day, after the witness and *Utly* had arrived with the oars, *Spotswood* agreed to re-

Whether a contract of sale is rescinded or released, by the acts of the parties, is a question of law, where the evidence establishing the acts and declarations from which such an effect is claimed, is clear and undisputed.
Accordingly, where *U.* sold certain oars to *H.* who purchased by *S.* his agent ; and the oars were delivered to *S,* who shortly after declared to *U.* that he could not pay for them ; that *U.* must take them and do the best he could with them ; and *L.* took them accordingly, and delivered them to *Herrick,* who sold them, and *U.* gave a receipt and order to

*Herrick,* in which he called them his (*U's*) oars, and thereby appropriated a part of the proceeds thereof, when the same should be sold ; *held,* that the contract of sale was rescinded by these declarations and acts of the parties ; that the property in the oars was thereby revested in *U.* and that he could not be considered as the mere agent of *H.* either in *fact,* or from *necessity ;* that consequently *H.* was not liable to *U.* for the difference between the contract price and the sale price, as he would have been, had the relation of vendor and vendee still continued to subsist between him and *H.*

*Held,* also, that in an action in the Court of Common Pleas, by *U.* against *H.* for the difference between the contract and sale price, the court, upon the above facts, should have non-suited the plaintiff ; and that their refusing to do so, was error.

ceive them at the culling of the witness, if they were deliv-, ered by a given hour that day, alleging that he wanted to go down the river, himself, before the raft went ; that the wit- ness culled the oars, and presented the culling bill to *Spots- wood*, not far from the time agreed upon, the witness thinks a few minutes after the hour, but those who assisted in the culling thought it was before the hour agreed upon ; that *Spotswood*, on the presentation of the bill, evaded saying whether he would take them or not, but observed he would see about it at the *Cedars*, a place still further down the riv- er ; that the number of feet of oars was 4614, as appears by the bill of culling ; that the witness went down to *Mon- treal* on the raft ; that the oars also went there on the raft ; that, at *Montreal*, *Utly* took the oars from *Spotswood's* raft, and delivered them to a Mr. *Herrick*, to take to *Quebec*, to deliver to Doctor *Man*, to be sold for *Utly's* benefit ; that the witness does not know that *Utly* made any claim upon *Spots- wood* or *Healy*, at *Montreal*, or elsewhere, for the pay for the oars.  In answer to the question whether *Spotswood* was *Healy's* agent, the witness answered, that *Healy* told him, in *Montreal*, that he had sent *Spotswood* to *Salmon Riv- er*, to arrange and collect a debt he had against *Erwin*, and also one against *Gove*, and that he was his agent for that pur- pose ; that *Spotswood* received boards and planks of *Erwin* and *Gove*, of which the raft was composed ; that he, the wit- ness, had about $100 worth o lumber on the raft, which he had agreed to sell to *Spotswood*.  The witness further testi- fied, that, on the same day that the contract was made, *Ut- ly* delivered oars, to the value of between ten and twenty dollars, to *Spotswood*, which were taken on the raft before it left *Salmon River*.  The witness further testified, that *Utly* took the oars which he had put upon the raft, and delivered them to *Herrick*, at *Montreal* ; and that, if all were not so taken by *Utly*, *Spotswood* had paid him for such as were not so taken, and the witness had no doubt that they were all taken, except the small quantity of between ten and twenty dollars, above mentioned.

*Henry Bagly*, sworn on the part of the plaintiff, testified, that, in *August*, 1819, *Spotswood* hired him to take down to

*Montreal*, from *Salmon River*, five cribs of boards and planks, which he, *Spotswood*, had received from *Erwin* and *Gove*, for *Healy ;* that the cribs were ready made, in the *Salmon River*, and the witness was to run them to *Montreal*, for $80 per crib ; that, after the witness had started from *Salmon River*, with the five cribs, *Spotswood* told him he had bought a quantity of oars of *Utly*, at a penny half penny per foot, to be delivered at the *Coteau de Lac ;* and, after the arrival of *Utly's* oars at the *Coteau de Lac*, and after *Spotswood* had agreed to take the oars upon the culling of *Samuel P. Nims*, *Spotswood* came upon the raft, and directed the witness to haul them upon the raft, (which he did as fast as they were culled) and that he, the witness, should be paid for taking them to *Montreal ;* that, at the *Coteau de Lac*, the raft was wind bound a few days ; that, as *Utly's* oars were culled by *Samuel P. Nims*, he, the witness, pulled them on the raft ; that, at the *Cedars*, or below, before the raft arrived in *Montreal*, *Spotswood* came on the raft. He told *Utly* that he had been disappointed about receiving money ; that he could not pay for the oars ; and that he, *Utly*, must do the best he could with them ; that, at *Montreal*, he delivered the five cribs to *Spotswood*, at the cross, about three miles below town, and that *Healy* paid him for taking them down, as an honest man should ; that *Spotswood* had agreed to find all the oars necessary to propel the raft ; that he did not find them, nor procure them ; and that the witness was obliged to find such oars : that the witness, after he had received his pay, claimed a further sum of *Spotswood*, for finding such oars, and also taking the *Utly* oars to *Montreal ;* that *Spotswood* agreed to submit the amount of this bill to some lumberman ; and that he and *Spotswood* did go down to the cross, and there submitted the bill to a Mr. *Herrick*, who decided it to be reasonable ; that it amounted to $64, which sum *Spotswood* agreed to pay the witness, on going up to *Healy's* store, in town ; that he and *Spotswood* went to the store, and *Spotswood* and *Healy* had a private conversation, which the witness did not hear ; and, soon after, *Spotswood* came to the witness, and refused to pay the $64, alleging that he, the witness, must get it out of *Erwin* and *Gove*, who

·ought to have furnished the oars for propelling the raft; that the witness sold to *Spotswood* about eleven hundred feet of oars, which went down on the raft, and which *Healy* paid the witness for, in *Montreal*; and which oars he, the witness, understood *Healy* sent to *Quebec*, by Mr. *Herrick*. This witness also stated that, in a conversation with *Healy*, he understood from him, that *Spotswood* was his (*Healy's*) agent, so far as it related to all lumber contracts, which he (*Spotswood*) had made at *Salmon River*, or near there.

*Samuel Sanborn, Jun.* sworn on the part of the plaintiff, testified, that it was worth $10 to take 100 oars, averaging eighteen feet long, from *Salmon River* to *Quebec*; and that it was worth about as much to take them from the *Coteau de Lac*.

*Charles H. Wheeler*, sworn on the part of the plaintiff, testified that, the next season after *Spotswood* took down the raft, he, the witness, had a conversation with *Healy*, relative to *Spotswood*; that the witness informed *Healy* that there was great dissatisfaction at *Spotswood's* conduct at *Salmon River*; that, particularly, *Spotswood* had made a contract with *Utly*, relative to oars, and that *Utly* was greatly dissatisfied with *Spotswood's* conduct; upon which *Healy* observed, he had the greatest confidence in *Spotswood*, and should ratify all lumber contracts made by him, when at *Salmon River*.

*Ebenezer Curtis*, sworn on the part of plaintiff, testified, that he sold a few oars in *Quebec*, in the autumn of 1819, at one penny per foot, being the highest price that he could obtain for Doctor *Man*; that the Doctor told him he wished he had sold them all at that price, if he could have effected such sale immediately; that oars were very low at that time in *Quebec*.

Here the plaintiff rested his cause. The defendant then moved for a nonsuit, on the ground that the contract was rescinded by *Utly*; and that the oars were the property of *Utly*, when delivered by him to *Herrick*; which motion was denied.

The defendant then introduced, in evidence, a receipt and order, of which the following are copies :

UTICA,
August, 1823.

HEALY
v.
UTLY.

" Received, *Montreal, August 12th,* 1819, of *Martin Herrick,* ten dollars, which he is to take, when he sells my oars.                                        *Henry Utly.*"

" *Montreal, August* 12, 1819. Mr. *Herrick,* Sir, please to pay the bearer, *Samuel P. Nims,* forty dollars, if you get so much for my oars, above what is paid.
                                        *Henry Utly.*"

After the introduction of the receipt and order, the defendant renewed his motion for a nonsuit, on the ground before taken; which motion was again overruled by the Court.

To these decisions, the defendant below took the bill of exceptions.

*J. Parkhurst,* for the plaintiff in error. The contract was rescinded. *Spotswood* informed *Utly,* that he could not pay for the oars, that he must do the best he could with them ; and *Utly* received them back, and delivered them over to *Herrick.* Suppose the oars had sold for more than the penny half penny per foot, will it be pretended that *Healy* could have recovered the excess of *Utly ?* It is plain, that the latter might have received the entire avails, without being at all accountable to the former.

It is good cause for error, that the Court below refused to nonsuit the plaintiff, if the law is against the plaintiff's action.(*a*)

(*a*) *Foot* v. *Sabin,* 19 *John.* 157.
(*b*) 5 *John.* 395.

This case bears no analogy to that of *Sands & Crump* v. *Taylor & Lovett,*(*b*) upon the principle of which the Court below refused the nonsuit. In that case, the wheat remained in the hands of the vendors. In this, the oars were in possession of the vendee. There notice was given by the vendors, to take away, and pay for the wheat, or it would be sold for the account of the vendors. Here the oars were finally re-delivered to, and in possession of the vendors, and no notice was given of the intention of *Utly,* to take and

(c) Gillet
v. Maynard, 5
John. 85.
Towers v.
Barret, 1 T.
R. 133.

sell them for the account of *Healy*, and hold him responsible for any difference in price. This contract was at an end, by the consent of both parties. *Spotswood*, the agent of *Healy*, and, of course, with his implied assent, directed *Utly* to do the best he could with the oars, to which *Utly* assented by re-taking the possession, and converting them to his own use.(c)

*A. Wheeler*, contra. The only point stated in the bill of exceptions, in which the plaintiff in error was overruled, is the refusal of the Court below to nonsuit on his motion. He must be confined to this single point. A bill of exceptions is not designed to draw the whole matter into examination again, but only the points to which it is taken ; and the party must lay his finger on those points.(d) Whether a verdict is against evidence or not, is a question which cannot arise in this form.(e) The motion for a nonsuit, was on the sole ground that the contract had been rescinded, by the plaintiff's own showing.

(d) 1 Bac. A-
br. Bill of Ex-
ceptions, 529.
Van Gorden
v. Jackson, 5
John. 467.
Frier v. Jack-
son, 3 id. 507.
(e) 2 Caines'
Rep. 169. 14
John. 307.

The contract, the agency of *Spotswood*, and the delivery of the oars at the *Coteau*, with their value, were clearly proved. Upon their delivery, and the presentment of the culler's bill, the price became due. This was done at the *Coteau*, before the raft started for *Montreal ;* and a right of action accrued, the moment *Spotswood* refused to pay. Nothing but a release, or a contract for a valuable consideration, could defeat the claim.(f) True, *Spotswood*, the agent of *Healy*, refused to pay for the oars after their arrival at the *Cedars*, saying he had been disappointed about receiving money, and that *Utly* must take the oars, and do the best he could with them. It is true, that this operated to rescind the contract on the part of *Healy ;* and authorized *Utly* to take and sell the oars for the best price that could be obtained, holding *Healy* responsible for the difference between the *market* and *contract* prices. The declaration of *Spotswood*, that *Utly* must do the best he could with the oars, was equivalent to an *appointment* of *agency*. Even without such an appointment, the law constituted *Utly* an agent to sell, which was no waiver of his right to damages

(f) Sweet
v. Palmer,
16 John. 183.
2 id. 450.

for breach of the contract. The whole law, on this question, is considered in *Sands et al.* v. *Taylor et al.*(g)

*Utly's* taking the oars from the raft at *Montreal*, and sending them to *Quebec*, to be sold for his benefit, standing alone and unexplained, is not even *prima facie* evidence, that he had rescinded the contract. It was a circumstance affording ground for presumption and conjecture only. At all events, whether the declaration of *Spotswood*, and the subsequent conduct of *Utly*, rescinded the contract, was a pure, unmixed question of *fact*, appertaining exclusively to the province of the jury to determine. If a mixed question of *law* and *fact*, the rule would be the same. A variety of evidence had been given to the jury, without any objection to its admissibility. It was clearly proved, that a cause of action once existed. Whether this had been waived, released, abandoned or destroyed by the act of *Utly*, was the only question in the cause, and was a question of fact. Had the defendant below intended to withdraw the evidence from the jury altogether, and so refer the whole matter to the determination of the Court, he should have tendered a demurrer to the evidence, upon which the jury would have been discharged ; or assessed the damages contingently.(h) The Court should refuse a new trial upon this evidence, on the ground that it belonged to the jury.(i) The admissibility of the evidence being established, how far it conduces to the proof of the fact, which is to be ascertained, is not for the Judge to decide, but for the jury exclusively.(j) The Court below could not, therefore, have nonsuited the plaintiff, without a manifest invasion of the province of the jury. They were bound to submit the cause to the jury. Formerly it was held, that the Court could, in no case, compel the plaintiff to be nonsuited :(k) and the farthest this Court have gone is, to say, that a Court of Common Pleas ought to nonsuit, when the evidence is so clearly against the plaintiff, that there is no dispute about the facts, or *any weighing of testimony, falling within the province of the jury*,(l) or where the evidence of the plaintiff *entirely fails* to maintain his case.(m) In the last case cited, the plaintiff fail-

*Margin notes:*

UTICA, August, 1823.

HEALY v. UTLY.

(g) 5 *John.* 404, *et seq.*

(h) *Foot* v. *Wiswall*, 14 *John.* 307-8. 2 *Tidd's Pr.* 791, 2, 3. *Lewis* v. *Few*, 5 *John.* 28. 2 *H. Bl.* 205, 8.
(i) 12 *John.* 298. 13 *id.* 335
(j) 2 *Tidd's Pr.* 785. 5 *John.* 28. 2 *Wash. Rep.* 203, 110.

(k) 2 *Tidd's Pr.* 798. 2 *T. R.* 281, *Watkins* v. *Towers.*
(l) *Pratt* v. *Hull*, 13 *John.* 335.
(m) *Foot* v. *Sabin*, 19 *John.* 157.

ed to prove the note against all the defendants, and there was no evidence properly before the jury. This case presents the true point of distinction ; for the Court are the exclusive judges of the *admissibility* of evidence ; and of its *legal effect,* when referred to them by demurrer and joinder. The matter here urged, as a ground of non-suit, if entitled to any weight at all, went merely in *discharge* of the action ; and there is no complaint, that the whole case was not fairly submitted to the jury.

SAVAGE, Ch. J. The boundary, which separates the powers and duties of Courts and Juries, has long been well defined. The jury are to ascertain and determine any *facts* which are disputed ; the Court are to pronounce the *law* upon those facts. The facts established in this case, beyond dispute, are the *contract* between *Utly* and *Spotswood* for the oars, the *agency* of *Spotswood,* the *delivery* of the oars by *Utly,* and the *receipt* of them by *Spotswood,* at *Coteau de Lac.* Had the evidence closed here, there would be no doubt about the plaintiff's right of recovery. The important question then is, has he divested himself of that right ? *Spotswood* told *Utly,* at the *Cedars,* that he had been disappointed in procuring money, and could not pay for the oars ; and that he (*Utly*) must do the best he could with them. What reply *Utly* made does not appear; but, at *Montreal,* he took the oars in question from *Spotswood's* raft, and sent them by Mr. *Herrick* to Dr. *Man,* at *Quebec,* to be sold for his (*Utly's*) benefit. He calls them *his oars,* in the receipt and order on *Herrick,* for the proceeds of the sale. These facts are equally undisputed. A question of law, then, arises for the Court to decide, viz. whether the declaration of *Spotswood,* and the subsequent taking the oars from the raft, and disposing of them for *Utly's* benefit, he treating them distinctly as his own, are not full evidence of a *re-sale* of the oars by *Spotswood* to *Utly.* In my opinion they are, even independent of the receipt and order ; and that the plaintiff shewed no right to recover : that it was the duty of the Court below so to have decided : and that, of course, the plaintiff should have been nonsuited. I think this case clearly

distinguishable from *Sands & Crump* v. *Taylor & Lovett*, relied upon by the defendant's counsel. In that case, the defendants, after receiving *part only*, of the wheat sold, refused to take the residue, and the plaintiffs were, *of necessity*, compelled to dispose of it. But in this case, *the entire subject of the contract was delivered.* It was *perfectly optional* with *Utly*, whether he would take back the oars or not ; and his doing so can be accounted for, upon no other principle, than the intention to re-purchase them in payment of his debt, or to rescind the contract, upon the alledged inability of *Spotswood* to pay for them.

I am accordingly of opinion, that the judgment must be reversed, and a *venire de novo* awarded.

SUTHERLAND, J. It was in evidence, that after the oars were delivered to *Spotswood*, and were on their way to *Montreal*, and when *Utly* was entitled to his pay for them, *Spotswood* told him he could not pay him, and that he must take the oars, and do the best he could with them. He, accordingly, accompanied the raft and oars to *Montreal*, and there delivered them to *Herrick*, to take to *Quebec*, to Dr. *Man*, to be sold on *Utly's* account. There was no evidence of payment being demanded for the oars, at *Montreal*, either of *Healy* or *Spotswood*, or of any notice, to either of them, that the plaintiff would sell the oars on their account, and hold them responsible for the difference between the price agreed to be given by *Spotswood*, and that at which they might sell.

Upon this evidence, the defendant moved for a nonsuit, on the ground of its being apparent that *Utly* considered the contract with *Spotswood* rescinded, and treated, and disposed of the oars, as his own.

I think the nonsuit ought to have been granted. It is perfectly clear that *Utly*, on his arrival at *Montreal*, considered the contract at an end, and the oars as his own. And, on the authority of the cases of *Pratt* v. *Hull*, (13 *John. Rep.* 334) and *Foot* v. *Sabin*, (19 *John.* 154) the refusal to grant the nonsuit was error, for which the judgment must be reversed, and a *venire de novo* awarded, returnable in this Court.

WOODWORTH, J. dissented. He said, the purchase of the oars, at a stipulated price, was fully proved, as well as the subsequent delivery. *Healy* admitted that *Spotswood* was his agent, so far as related to all lumber contracts made by him at or near *Salmon River*. From this state of facts, *Utly* was entitled to recover, unless the defendant has shewn that the contract was rescinded. The only evidence applicable to this part of the case is, that soon after the delivery of the oars, and before the raft arrived at *Montreal*, *Spotswood* informed *Utly* he could not make payment, and that he, *Utly*, must do the best he could with them. It does not appear that any reply was made, nor explanation given, as to the terms upon which the oars were to be taken. At *Montreal*, *Utly* took the oars from *Spotswood's* raft, and delivered them to *Herrick*, to take to *Quebec*, to be sold for his benefit. The highest price for oars, at *Quebec*, was one penny per foot : *Spotswood's* contract was one and a half.

The defendant gave, in evidence, a receipt, from *Utly* to *Herrick*, in the words following : " Rec'd. of *Martin Herrick*, ten dollars, which he is to take when he sells *my oars* ;" also, a draft for $40. A motion was then made for a nonsuit, on the ground that the contract was rescinded, which was overruled, and the defendant excepted. There was no question of fact to be submitted to the jury. It is a mistaken view of the case, to say that the jury were to decide whether the contract was released or rescinded. The right to recover depends on the legal effect of *Spotswood's* direction to the plaintiff, to do the best he could with the property, and his subsequent acts. In the case of *Sands & Crump* v. *Taylor & Lovett*, (5 *John.* 395) the plaintiffs sold to the defendants a cargo of wheat, who received a part, but refused to receive the remainder. The plaintiffs made a tender of the residue, and gave notice that, unless the defendants received and paid for the whole, the residue would be sold at auction and they held responsible for any deficiency. The Court held, that the contract between the parties. and its part execution, produced a change of property ; that the defendants became entitled to the wheat, and the plaintiffs to the price ; that they became agents for the defendants, from necessity,

and their exercise of the right to sell ought not to be viewed as a waiver of their rights on the contract.

The principle of this case, I consider decisive of the present. The sale, by *Utly*, was not, *per se*, a waiver. The vendor having a right to sell, where the possession is thrown on him, although the vendee does not consent, I do not perceive how any well founded objection can be raised, after the vendee, by his act, restored possession to the vendor, and requested him to sell to the best advantage. By this act, the vendee appointed the vendor his agent.

It may be further remarked, that the plaintiff, having a clear right to recover the contract price, the defendant ought to have shewn that the plaintiff agreed to accept the oars, in full satisfaction. But there is no such proof. The plaintiff merely sells at the request of the defendant. This is perfectly consistent with the claim he now sets up. He credits what he received, and demands the balance. If he had received more than the contract price, he was liable to refund the excess. In as much, then, as the plaintiff has not released, nor received payment, in full, nor given his assent to rescind, it would be consistent neither with law or justice, to deprive him of his remedy. I cannot conceive that the case would be altered, if the defendant had delivered any other property to the plaintiff, and directed him to sell it. It would hardly be contended that it extinguished the debt. There must be proof it was so agreed, before we can arrive at that conclusion. The expressions used, shew that no such thing was intended. If, in truth, the plaintiff had received back the property, in satisfaction of the contract, it was immaterial to the defendant what disposition was made of it; but if it was delivered to an agent, to be applied, then the directions, as to the sale, are pertinent, and accord with the inter . I am of opinion, that the Court below decided correctly, there being no evidence that the contract was rescinded ; and, consequently, the judgment should be affirmed.

Judgment reversed.