## JAMES & MITCHELL *v.* ADAMS.

### Decided April 17, 1880.

16 245
35 394
35 505

16 245
39 741

16 245
44 84

16 245
48 611
1880
Special Term.

James & Mitch-
ell
v.
Adams.

16 245
61 601

1. In an action on a special contract to recover damages for failure to accept and pay for property agreed to be purchased by a special contract, the entire consideration and the entire act to be done in virtue of such consideration must be stated in the declaration substantially ; and if the plaintiff's proof is of a contract which materially differs from that stated in the declaration, after the plaintiff's evidence has been all submitted, the court on the defendant's motion should exclude it from the consideration of the jury, if there be a manifest variance substantially between the contract proven and the contract stated in the declaration, when the evidence is viewed in a manner most favorable to the plaintiff, as on a demurrer to evidence by the defendant.

2. A material difference in the description of the property agreed to be sold between the statements of the declaration and the plaintiff's proof is such a material variance as will destroy the plaintiff's right to recover.

3. If the declaration in such an action states that the contract required the defendant to pay for the property sold a certain sum in cash and the balance on a certain credit, and the proof is that the contract required the defendant to pay the stated sum in cash and to give his note for the balance, this is not such a variance as would destroy the plaintiff's right to recover, even though the length of time given for the payment of the residue as stated differs from the length of the credit as proven.

4. In such an action the measure of damages is the difference between the market value of the property, when it ought to have been accepted, and the contract price.

5. If the property agreed to be sold was the remnant of a stock of dry goods, the market value of such remnant, when it ought to have

been accepted, may be proven by the testimony of dry goods mer-
chants not acquainted with the particular stock of goods, but who
testify generally to the per cent. of depreciation of such a remnant
of a stock of goods produced by sales of the more salable portions
and by the injury resulting from keeping them in the store.

6. Such an action may be brought, when the defendant refuses to accept
the goods and repudiates the contract, before the time has elapsed,
which under the special contract he was allowed to pay the balance
due under said contract.

7. The plaintiff in such an action, brought before all the purchase-money
is due, cannot recover on the common counts.

8. Upon such a contract the plaintiff can in no form of action recover,
if the defendant accepted the goods sold, and subsequently the
plaintiff took possession of the goods as his own, and sold them as
his own without the defendants objecting, such conduct of the par-
ties being a cancellation of the contract.

9. In such an action, if the contract was for the sale of such of the
goods as might be in the store at a future day named, and by the
contract the plaintiff agreed to run down the stock of goods as
much as possible by the future day named for their delivery by
making sales of said goods, it is not only necessary to allege in the
declaration, that this obligation of the plaintiff had been fulfilled,
but also that the defendant had notice thereof. Such notice is
sufficiently proven by showing the defendant's knowledge of its ful-
filment, and an express notice thereof need not be proven.

Writ of error and *supersedeas* to a judgment of the
circuit court of the county of Wood, rendered on the
17th day of October, 1878, in an action at law in said
court then pending, wherein A. R. James and John W.
Mitchell were plantiffs and T. H. Adams was defendant,
allowed upon the petition of said Adams.

Hon. J. M. Jackson, judge of the fifth judicial circuit,
rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement
of the case.

This case has been before this Court heretofore. It is
an action of *assumpsit* brought in the circuit court of
Wood county, by the plaintiffs, James and Mitchell,
against the defendant, Adams for his refusal to accept

and pay for certain goods, &c., which by a special contract had been sold to him by them. On the first trial of the case the jury found a verdict for the plaintiff for $1,000.00; and the court refused to grant a new trial and entered up a judgment pursuant to the verdict. The defendant obtained a writ of error to this court; and the judgment of the circuit court was reversed, a new trial awarded, and case remanded to the circuit court, and the plaintiff permitted to amend his declaration. See 8 W. Va., 568.

The suit was an action of *assumpsit* on a special verbal contract for the purchase of a stock of dry goods and the residue of a lease of a store. Originally the declaration contained but one count, to which the defendant demurred, which demurrer the circuit court properly overruled, as decided by this Court. On the trial of the issue of *non assumpsit*, after the plaintiffs had introduced all their evidence, the defendant's counsel moved to exclude it from the consideration of the jury, because the contract proven thereby was materially variant from that set out in the declaration. This motion the circuit court overruled, saying, "it was the province of the jury to determine whether the contract proven was substantially the same as the contract set out in the declaration."

This Court decided that the circuit court erred in this ruling, and held, that it is proper for the court to exclude in such a case the plaintiff's evidence from the consideration of the jury, where, considering the evidence in the most favorable light for the plaintiff as on a demurrer to the evidence by the defendant, the variance in material portions of the contract is manifest; but that the plaintiff ought to be permitted to file an amended declaration. This was done, there being in the amended declaration three special counts and the common counts.

The first special count, after reciting that the plaintiffs were merchants engaged in selling dry goods in Parkersburg, states that they made a contract of sale with the de-

1880
Special Term.

James & Mitchell
v.
Adams.

fendant in September, 1871, and that in the sale was inclu-
ded First—The entire stock of goods contained in their
store which might be in their store on January 1, 1872,
when the property sold was. to be delivered ; Second—A
thousand dollars worth of dry goods not then in the store
but which had been bought and were *en route* from the east ;
Third—The plaintiffs were to be permitted to keep up
their stock of staple goods ; Fourth—They were required
to run down the stock of goods as low as possible by
January 1, 1872 ; Fifth—The defendant was then to pay
cost prices for the goods, $1,000.00 in cash and the residue
in six and twelve months from that time.   The plain-
tiffs allege that they performed all that was required
of them under this contract, and offered to deliver these
goods to the defendant on January 1, 1872, and incurred
a cost of $100 in making an inventory preparatory to
delivering these goods.

The second count describes the property sold differ-
ently, as, First—All the dry goods in the store on Jan-
uary 1, 1872 ; Second—The unexpired term of the lease
of said store.   It also differs in not alleging that by the
original contract the plaintiffs were to run down by
January 1, 1872, the stock of goods as low as possible,
but states that by a modification of the contract, made
December 1, 1871, this was to be done by selling off the
goods at cost-prices.

The third count is also the same as the first except
that the description of the property sold is, First—All
the dry goods in the store on January 1, 1872 ; Sec-
ond—The $1,000.00 of new dry goods then *en route* from
the east.   As the breach of the contract by the de-
fendant the first count alleges, that the plaintiffs ten-
dered the goods on January 1, 1872, and the defendant
refused to accept or receive them.   There are no dam-
ages laid at the end of this count.   In the second and
third counts the breach is the same, except it includes
that defendant refused to pay for the goods ; and dam-
ages are laid at the close of these counts.   The common

counts concluded in the usual manner, thus: "and whereas the defendant afterwards, to wit, on the 5th day of January, 1872, at the county aforesaid, in consideration of the premises respectively then and there promised to pay the said several sums of money respectively to the plaintiffs on request, yet the said defendant has disregarded his said promise and has not paid the said sums of money or any part thereof to the said plaintiffs, or either of them, although often requested so to do, to the damage of the plaintiffs $2,000.00. And therefore they bring this suit."

To this declaration and each count thereof the defendant demurred, the court overruled the demurrer, and the defendant pleaded *non assumpsit*. The jury found a verdict for the plaintiff and assessed the damages at $940.00 with interest from January 1, 1872. The court overruled a motion for a new trial made by the defendant's counsel, and rendered judgment pursuant to this verdict, to which the defendant's counsel excepted, and the court certified all the evidence in the case.

Several witnesses of the plaintiffs were introduced to prove the value of the goods at the time of their delivery as fixed by the contract, as compared with the cost-price which by the contract was to be paid. They testified that they were merchants; that they knew nothing of this particular stock of goods, but as merchants they estimated that the remnant of a stock of goods, sold down as low as this was stated to be sold down, were worth considerably less than cost-prices, because of the selling off of the more salable goods and because of the injury resulting to dry goods from keeping them in a store a length of time. They undertook to estimate the per cent. of this depreciation below the cost prices of the goods. No exception was taken to the admission of this testimony, when offered, but after the plaintiffs' evidence was concluded, the defendant's counsel moved the court to exclude from the jury this testimony, because not proper evidence to prove the market-value of the stock

of goods named in the declaration, and also to exclude from the jury all the plaintiffs' evidence, because the contract proven thereby is variant from that alleged in the declaration, which motion the court overruled certifying all the plaintiffs' evidence; and the defendant excepted to this ruling of the court.

The defendant having proved that this suit was brought November 15, 1872, also asked the court to instruct the jury, that this suit was prematurely brought, and that the plaintiffs were therefore not entitled to recover, they having no right to institute the suit until one year after January 1, 1872, when the last payment was by the contract to have been made. But the court refused to so instruct the jury.

The evidence of the plaintiffs proved, that in September, 1871, the defendant, who lived in Kentucky, came to Parkersburg, where he had formerly kept a store, and in the plaintiffs' store in Parkersburg contracted to purchase their stock of dry goods, which might be on hand on January 1, 1872, and the remainder of the term of their lease on the store-room, at cost-prices, including a stock of dry goods of about $1,000.00 which had been recently bought but was not yet in the store. By this contract the plaintiffs were to be permitted to keep up their stock of staple articles, in order that they might be able to run down their entire stock as low as possible by January 1, 1872. The sale was to be completed by delivery of the possession of the goods on January 1, 1872, the defendant to pay for them cost-prices, $1,000.00 in cash and the balance in six and twelve months from January 1, 1872; and for these deferred payments he was to execute his notes payable at those dates. The plaintiffs carried out their part of this contract, putting in the store the $1,000.00 worth of new goods and purchasing from time to time staple articles and running down their stock as low as possible. About December 1, 1871, the defendant wrote to the plaintiffs from Louisville, Kentucky, and advised them to sell off their goods

at cost-prices in order to reduce the stock as low as possible, to which they acceded, and did thereafter sell at cost-prices, in order to meet the wishes of the defendant. About January 1, 1872, the defendant came to Parkersburg, and they, the plaintiffs and defendant, proceeded to take an inventory of the goods at cost-prices. The evening before the inventory was completed, the defendant said he was ready to pay as he had agreed, and wrote a check to them for $1,000.00 and also a note, and paid half the cost of taking the inventory. The next day after the inventory was completed, except the footing up of the amount, the defendant took the check for the $1,000.00 and the note out of the drawer, where he had placed them, and put them in his pocket, to which the plaintiffs objected, but he said he had to go to Kentucky, and asked them to send him the inventory, that he would look over it and would send another check and his notes for the deferred payments according to the agreement.

The inventory was sent to him to Kentucky, which after some time he returned without any explanation, and he never took the goods or the lease, and never paid for them, according to the statement of James one of the plaintiffs in his evidence; but this witness states afterwards, that "they did in fact give him possession of the goods, for when he was about to go away that morning to Kentucky, after the inventory was completed, he told me to stay there in charge of the goods, and to sell the same at cost or a little under cost—not to miss a sale—and as fast as possible, as he wanted to make room for his stock of goods in Kentucky." It is proven by the evidence, that for some time James, the plaintiff, did continue thereafter to sell the goods in the name of the defendant, and to keep the books and accounts in his name. There were groceries in the store not included in the contract of sale. The inventory amounted to between $4,700.00 and $4,800.00.

In February in reply to a letter from the plaintiffs the

defendant wrote to them, that he had concluded not to take the goods, unless they would throw off twenty per cent., that he considered they were not worth cost-price. After that James ceased to sell the goods in the name of the defendant, and the plaintiffs sold them as their own, partly by auction, and without notifying the defendant thereof. They sustained a loss as compared with cost-prices of about $1,700.00 on these sales. Several merchants testified that a stock of goods, which had been reduced by being sold down to the extent that this was stated to have been, would be depreciated considerably below cost-prices, estimating the depreciation at from ten to twenty-five per cent.

The defendant testified in his own behalf, and stated the contract and what occurred at the time the inventory was taken as materially different from what the plaintiffs had testified. He says that the check for $1,000.00 was payable to the plaintiff, James, alone, and was so drawn to him as his clerk, in which capacity he supposed he then stood to him. He had arranged with him, in the event he consummated the sale, that he should act as his clerk. But he afterwards says he did not receive the goods; and he further says, he could not say Mr. James was authorized to sell these goods in his name. He reckoned he was hardly authorized to do it, until he closed the sale. He did not remember authorizing him to sell for him.

The instructions asked of the court sufficiently indicate the character of the defendant's evidence and his defence. I do not regard it as important to state it in detail, as, in the manner in which the case is presented to this Court, it must be disregarded by us, so far as it is in conflict with the plaintiffs' evidence. The first instruction asked by the defendant and refused by the court before referred to, is as follows:

"First—If the jury believe from the evidence that the defendant agreed to purchase from the plaintiffs the goods and chattels in the declaration mentioned, and

1880
Special Term.

James & Mitch-
ell
v.
Adams.

upon the terms therein mentioned, and this suit was instituted before the expiration of one year from the 1st day of January, 1872, then this suit was prematurely brought, and the plaintiffs are not entitled to recover. And the date of the original writ, November 13, 1872, fixes the time of the institution of this suit."

It was given by the court as thus modified:

"Unless the jury should believe from the evidence that the defendant, Adams, on the 1st day of January, 1872, or shortly thereafter, and before the institution of this suit, repudiated said contract and refused to comply with the same, and of which refusal and repudiation he notified the plaintiffs, then in that event the said suit was not prematurely brought, and the plaintiffs are entitled to recover."

The following eight instructions, numbered from two to nine inclusive, were given by the court at the defendant's instance, and were not excepted to by the plaintiffs' counsel:

" 2d. If the jury believe from the evidence that the defendant agreed to purchase from the plaintiffs the stock of goods in the declaration mentioned in manner and form as therein alleged, and to receive the same on the 1st day of January, 1872, or as soon thereafter as an inventory could be made, and that the defendant failed to receive and pay for said goods as he had agreed, and the plaintiffs thereupon retained the ownership and possession of said goods and sold the same without notice to the defendant, then the measure of damages is the difference between the contract-price and the *market-value* of said goods at Parkersburg on the 1st day of January, 1872, or at the time the inventory was made, and it devolves upon the plaintiffs to show by proof to the satisfaction of the jury what such difference was, and that the market-value of said stock of goods at Parkersburg at the time mentioned was less than the contract-price, in order for them to recover anything more than nominal damages in this action.

" 3d. If the jury believe from the evidence that the plaintiff, John W. Mitchell, sold his interest (after the refusal of the defendant to receive said goods) to his co-plaintiff, A. R. James, and the said A. R. James afterwards sold said goods at auction, and these sales were made without notice to the defendant, then the prices the said goods brought at said sales are not to be considered by the jury in estimating the damages in this cause.

" 4th. That the burden of the proof is upon the plaintiffs to prove the special contract as alleged in the declaration, and if the contract proven differs in any substantial manner from the one alleged, the plaintiffs are not entitled to recover.

" 5th. That if the jury believe from the evidence that at the time of the making of the original contract for the sale and purchase of said goods, the defendant agreed to give his notes or a note for the deferred payment or payments beyond the sum of $1,000.00, then the contract is not proven as alleged in the declaration, and the plaintiffs are not entitled to recover.

" 6th. That if the jury believe from the evidence that by the terms of the original contract the defendant agreed to pay to the plaintiffs on or about the 1st day of January, 1872, for the stock of goods in the declaration mentioned $1,000.00 cash in hand and the balance in six and twelve months therefrom, and that afterwards said contract was modified so that the defendant and the plaintiffs agreed that the defendant should give his notes for said deferred payments, then the plaintiffs are not entitled to recover, because said modification is not alleged in the declaration.

" 7th. That if the jury believe from the evidence that the plaintiffs and defendant made the contract as alleged in the declaration, but that the plaintiffs, or either of them, were guilty of any fraud, misrepresentation or concealment as to the value of the stock of goods they then had on hand or the average monthly sales they were mak-

ing, and said defendant was induced by such fraud, misrepresentation or concealment to make such contract, then the verdict must be for the defendant.

" 8th. That if the jury believe from the evidence that the plaintiffs and defendant made the contract as alleged in the declaration, but that the plaintiffs did not comply with their portion of the contract by failing or neglecting to sell off the stock of goods on hand at the time of making the contract, and the $1,000.00 worth afterwards received from the east, as rapidly as possible, then the verdict must be for the defendant.

"9th. That if the jury believe from the evidence that the contract between the plaintiffs and defendant was, that the plaintiffs should sell off their stock of goods as rapidly as possible, and have said stock so reduced by the 1st day of January, 1872, that the value thereof should be about $1,000,00, *and* in any event not exceed $1,500.00, and that on the 1st day of January, 1872, the value of said stock did exceed materially the value of $1,500.00, and was of the value of $4,700.00 or thereabouts, then the verdict must be for the defendant."

The following instruction was asked by the plaintiff and given by the court:

"That if the jury believe from the evidence that the contract was made by and between the plaintiffs and defendant as in the declaration alleged, then the plaintiffs are entitled to recover in this action against the defendant, if the jury believe from the evidence that the defendant did not accept and take the remainder of the said stock at cost-price as alleged on the 1st day of January, 1872, or as soon as inventoried, and in such case the measure of damages for such failure to accept said goods is the difference between the contract-price, to wit, the cost-price of said goods on the said date in January, 1872, in Parkersburg, and the market-price of such goods at the time the defendant should have taken said goods according to the terms of said contract."

From the judgment of the circuit court rendered

October 17, 1878, refusing a new trial, and in favor of the plaintiff for $940.00 with interest from January 1, 1872, and costs, the defendant has obtained a writ of error and *supersedeas* to this court.

*Walter S. Sands,* for plaintiff in error, cited the following authorities :

1 Chit. Pl. (3d. ed.) 320 ; *Id.* 326 ; *Id.* 259, 260, 322, n., 130; 1 Esp. N. P. 250 ; Benj. on Sales 430 *et seq.*; 1 Saund. Pl. & Ev. 213. 215 ; 3 Rob. New Pr. 598 ; *Id.* 624 ; 3 Call 201 ; 2 Leigh 525 ; 3 Rand. 458 ; 1 B. Mon. 192 ; 2 H. & M. 446 ; 6 Wend. 454 ; 6 Rand. 203 ; 1, Stark. on Ev. 54-74 ; 3 Stark. on Ev. 1736 ; 1 Greenl. on Ev. § 440 ; Sedgw. Meas. of Dam. 686, n. 696 ; 9 N. Y. 184 ; 8 W. Va. 586 ; Benj. on Sales 564 ; 1 Chit. on Cont. 406 ; Hill. on Sales 468 ; 2 Pars. Cont. 678 ; Story Sales § 419 ; 5 T. R. 402 ; 18 N. Y. 552 ; 1 Cow. 345 ; 29 Barb. 454 ; *Id.* 315 ; 1 Hilt. (N. Y.) 511 ; 34 Barb. 301 ; 28 Ind. 365 ; 2 Binn. 287 ; 2 Strange 1185; 7 T. R. 470 ; 3 Johns. 42 ; 10 Johns. 119.

*John A. Hutchinson,* for defendants in error, relied on the following authorities :

4 Bing. 722, 728 ; 8 B. & C. 277 ; 1 Chit. Pl. (6th ed.) 347 ; *Id.* 338, 339 ; 1 Chit. Cont. 615 ; 5 Serg. & R. 19; 4 Rob. Pr. 871 ; 5 Gratt. 179 ; 4 Call 379 ; 23 Gratt. 572 ; 4 Rob. Pr. 300 ; 1 Whart. Ev. §§ 446-449 ; 112 Mass. 475 ; 13 Gray 354 ; 1 W. Va. 219 ; 7 Gray 467 ; 8 Allen 169 ; 1 Greenl. Ev. § 440 a.; 23 Wend. 354; 118 Mass. 428 ; Lush Pr. 532 ; 3 How. (U. S.) 530 ; 12 Ohio 483, 484 ; 4 W. Va. 397 ; 9 W. Va., 358, 363 ; 17 Gratt. 188 ; Pow. App. Pr. 204 ; *Id.* 191, 192 ; 4 Exch. 345 ; 79 Eng. C. L. Rep. 127, 147; 5 Serg. & R. 19.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by the record in this case is :

1880
Special Term.

James & Mitch-
ell
v.
Adams.

Did the circuit court err in overruling the demurrer to the declaration and each count thereof? As the common counts were in proper form, the court did not err in overruling the demurrer to the declaration. The counsel for the appellants object to the first count: first, that no damages are said to have been incurred by the breach of the contract named in the first count. As the object of an action of *assumpsit* is to recover damages for the breach of the contract, it is essential for a plaintiff to allege in his declaration in such action, that the breach of the contract has resulted in his damage. See *Stephens* v. *Washington,* 2 Wash. 203. But it is not necessary to allege at the end of each count in such a declaration, that damages have been incurred by the failure of the plaintiff to perform his promise named in the count. A general allegation at the end of the declaration, that the plaintiffs have sustained damages by the failure of the defendant to perform his several promises named in the declaration to a certain amount, is sufficient. See *Howard* v. *Wilmington & Sus. Railroad Co.,* 1 Gill 344. But in this case the damages alleged at the close of the declaration apparently refer only to the failure of the defendant to perform the several promises named in the common counts, and do not seem to allude to the promises named in the first count. Without deciding that this is the necessary construction of this declaration I will say, that it is much better for the declaration to lay damages at the close of each special count, or at the close of the declaration to so allege damages, as that it shall obviously refer to the breach of the promises in all the counts in the declaration named.

Again it is alleged, that the first count is fatally defectively, because it simply alleges that the defendant refused to accept the goods, and fails to allege that he refused to pay for them. This is a necessary allegation, as the gist of the action was the non-payment of the money agreed to be paid. Possibly however, this defect may be cured by the general allegation at the end of the decla-

ration, that the defendant refused to pay the several sums aforesaid, though this apparently refers only to the sums named in the common counts. But we need not decide whether this defect be fatal or not. It applies in its full force only to the first count, and not at all to the third count.

The counsel of the plaintiff in error claims that the second count is fatally defective, because it does not allege that there were any dry goods in the store-room on January 1, 1872, or their value, if any were there. There was no necessity to allege their value ; and that there were valuable goods in the store-room on January 1, 1872, is in effect alleged. It alleges that the plaintiffs were ready and willing to take an inventory of the goods in the store on January 1, 1872, and to deliver them to the defendant at cost-prices. This allegation necessarily implies that there were valuable goods in the store at that time.

But there is one fatal defect in each of the special counts in this amended declaration. The plaintiffs in each of these counts entirely fail to allege, that the defendant had any notice that the plaintiffs had performed their preliminary promise to run down by sales the stock of goods as low as possible by January 1, 1872. This was in effect alleged in the original declaration, which this court held to be good. It is true as a general rule, that a party, unless he has stipulated for it, is not entitled to notice before he can be held liable. See *Bliche* v. *Dymoke*, 2 Bing. 112,(9 E C. L. 338-339); *Stothert* v. *Goodfellow*, 1 Nev. & M. 528,(28 E. C. L.) But to this general rule there is an exception. When the obligation to perform a promise is dependent on something else to be done, and when from the nature of the case the knowledge of whether this preliminary act has been done lies peculiarly within the knowledge of the plaintiff and could not reasonably be expected to be known to the defendant, unless the information was given him by the plaintiff, then such information must be given to the defendant,

before he can be held bound to the performance of his promise; and therefore in such case notice must be alleged in the declaration. See *Hanle* v. *Hemyng*, Vin. Abr. "Condition" (Ad.) Pl. 15; *Vise* v *Wakefield*, 6 M. & W. 454; *Rountrul* v. *Hendricks, adm'r,* 1 B. Mon. 192; *Austin* v. *Richardson*, 3 Call 201; *Lamb* v. *Harrison, adm'r*, 2 Leigh 525; *Pastem* v. *Parker*, 3 Rand. 458. Each of the three special counts alleges, that the plaintiffs agreed to run down the stock of goods as low as possible by January 1, 1872, when the defendant agreed to take the balance of the stock of goods on hand at cost-prices; and each count properly alleges, that the plaintiffs did so run down the stock, but there is no allegation that the defendant had any notice or knowledge thereof. The defendant was not bound to take the goods, unless not only the goods were so run down by sales, but also unless the defendant had the information that they had been so run down, as it was a matter peculiarly within the knowledge of the plaintiffs. The declaration should therefore have alleged that the defendant had notice of this fact. But, while such notice must be alleged in the declaration, it will be sufficiently proven by showing to the satisfaction of the jury that the defendant knew that the plaintiffs had so reduced the stock of goods as they had agreed to do, as for instance, by proving that the defendant saw the stock of goods at the time he made the purchase, and again saw them at the time they were to be delivered, and had thus the opportunity of seeing that they had been reduced in quantity according to the contract. As each of the special counts fails to make this allegation, each of them is fatally defective; and the demurrer to them should have been sustained by the circuit court.

The plaintiffs in this case could not on the evidence recover on the common counts, as after the refusal of the defendant to accept the goods they re-sold them; and if they had not, they could not have recovered on the common counts till the expiration of the credit on which

1880
Special Term.

James & Mitchell
v.
Adams.

the goods were sold, if they could then. See *Hogedom*
v. *Leigh*, 6 Taun. (1 E. C. L.) 344; *Laman* v. *Duvall*, 9
Ad. & E. (N. S.) 1030; *Aubal* v. *Levy*, 10 Bing. 376.
A special action based on the refusal of the defendant to
accept and pay for the goods is the only proper action in
such a case, as is presented by the evidence in this case.
See *Girard* v. *Taggart*, 5 Serg. & R. 32; *Boyd &c.* v. *Lett*,
1 Man. Gr. & S. (50 E. C. L. R.) 222.

As therefore the three special counts should have been
declared fatally defective on the demurrer, and the plain-
tiffs cannot on the evidence recover on the general
counts, the judgment of the circuit court in favor of the
plaintiffs must be reversed; but, as the case must be re-
manded to the circuit court for another trial, it is proper
that we should express our opinion on the points which
were raised on the last trial, as they are likely to arise
again on the next trial.

The circuit court did not err in refusing on the de-
fendant's motion to exclude from the jury all the testi-
mony of the witnesses, S. Newberger, H. H. Dils, Jr.,
and Charles Epstein, which proved or tended to prove
the market-value of the stock of goods in the declara-
tion mentioned, because said testimony was not proper
evidence in the case, and ought not therefore to have
been considered by the jury. Even if this evidence had
been objected to at the proper time, when it was offered,
it ought not to have been excluded. These witnesses
were merchants, who testified, that while they had no
knowledge of the particular stock of goods which had
been sold, yet as merchants they knew that a stock of
dry goods, which had been run down by sales to the ex-
tent which it was shown this stock had been reduced,
would be depreciated by a per cent. named by them be-
low the cost-price of the goods (which was the contract-
price), because they would consist of the less salable por-
tion of the goods, and because dry goods, they as mer-
chants knew, were injured by being kept a considerable
time in a store.

·It is urged by counsel of the plaintiff in error that the rule, that a witness must state facts and not opinions, ought to have excluded this testimony ; but in my judgment this rule does not apply in a case like this. There is undoubtedly some difficulty in defining accurately the case to which this rule does properly apply ; and the courts of different States are not uniform in their decisions as to when this rule is to be applied. Thus in New Hampshire in the case of *Peterborough* v. *Jeffrey,* 6 N. H. 462, a witness, skilled in the matter of buying and selling lands in the vicinity, was not allowed to testify as ·to his opinion of the market-value of a tract of land at a particular time. So also in *Baird* v. *Kirk,* 11 N. H. 397, a witness, who had been engaged seven years in teaming and had owned, bought and sold many sleds, was not allowed to state his estimate of the value of a sled. But a different rule prevails in other States. Thus in Pennsylvania it is held, that a witness may be asked directly the money-value of land. See *Kellogg* v. *Krauser,* 14 Serg. & R. 142 ; and in *Vandine* v. *Barbee,* 13 Metc. (Mass.) 288, it was held, that an experienced gardener, who had examined the plaintiff's garden after it was injured by the burning of the defendant's brick-kiln, and who detailed the condition of the garden, might be asked the amount of the damage inflicted by the injury of which he testified.

In New York they appear to have gone quite far in excluding the evidence of witnesses on the ground that they were giving opinions and not facts.) See *Clarke* v. *Baird,* 9 N. Y. 185. Nevertheless in *Joy* v. *Hopkins,* 5 Denio 84, which was an action on warranty that a cow was good and young, a witness, who had seen the cow, was asked, what she would be worth, if she were good and young, and also what she would be worth, provided she gave four quarts of milk a day ; and the Supreme Court held these questions were proper. In *Brill* .v. *Flagler,* 23 Wend. 354, where the action was for damages for killing a dog, which appeared

on the trial to be a setter and was claimed to be valuable for hunting birds, a witness was permitted by the court below to testify as to the value of a good well broke setter-dog and as to the value of the services in breaking a setter-dog, the testimony of the witness being as to the value of setter-dogs generally and not as to the dog in question. Nelson, Chief Justice, with whom Cowen, Judge, concurred, said: "The opinion allowed as to the value of a well broke setter-dog, I am inclined to think, was barely competent, and the answers of the witnesses depended in a measure upon their skill and judgment in respect to these animals. These questions were put to persons supposed to be acquainted with the peculiar qualities of setter-dogs, and who had some knowledge of their value in market. The case is analogous to those in which the opinions of persons are always admitted of the value of domestic animals, such as cattle, sheep, &c., in which they are in the habit of dealing. They are supposed to be better acquainted with the general market-value of such animals, than the generality of mankind. A common standard is thus fixed, that may assist in arriving at the value in the particular instance, which will vary according to the quality, condition, &c., of the article in question." Bronson, Judge, was of opinion, that improper evidence had been admitted on the question of damages; and he probably referred to this testimony.

I think that having regard to our practice to admit testimony habitually with reference to value, which is held objectionable elsewhere, as in New Hampshire, we must regard that, as a means of ascertaining the value of the remnant of an old stock of goods, it is legitimate to ask a merchant, though he be not acquainted with the particular stock of goods, how much below its cost-price such a remnant of a stock of goods would be depreciated. Such a witness must by his experience in merchandizing in similar goods get superior information as to the effect upon the market-value of a stock of goods the run-

1880
Special Term.

James & Mitch-
ell
v.
Adams

ning it down by sales to a stated extent would produce; and the jury are entitled to the benefit of his superior knowledge, so acquired, in their effort to fix a value on the remnant of a stock of goods. There is an intrinsic difficulty in making such an estimate; and if evidence of this character was to be excluded from the jury, it would probably much increase their embarassment in reaching a conclusion. The jury would likewise have a right to consider, in estimating the value of goods at the time when the contract required them to be delivered, the price at which they were sold at public auction shortly afterwards, as tending to show their market-value when they were to have been accepted by the defendant, though of course it would not be regarded as conclusive thereof, or as even of any great weight, as the goods might in the meantime have become of less value, or the market-price might have changed. Still if the sale at auction be shortly after the time when the goods ought to have been accepted, the price thus obtained at auction may be considered by the jury as one of the elements, by which they might reach a conclusion as to the market-value of the goods at the time when they ought to have been accepted; and the court might properly have so modified the defendant's third instruction.

The circuit court erred in refusing on the motion of the defendant's counsel, after all the plaintiffs' evidence had been introduced, to exclude from the jury all this evidence, because the contract proven thereby was materially variant from the contract alleged and set forth in any count in the plaintiffs' declaration. In this case, when formerly before this Court, it was decided, that in actions founded on special contracts to recover damages for the failure and refusal to perform the same, generally the entire consideration must be stated, and the entire act to be done in virtue of such consideration; and that generally in actions on special contracts, if any part of the contract vary materially from that which is stated in the declaration, it will be fatal,

a contract being an entire thing; and if the contract proven is materially variant from that described in the declaration, on the motion of the defendant's counsel at the close of the plaintiff's evidence it should all be excluded from the jury, but to justify such exclusion the variance must be manifest, when viewed in a light most favorable to the plaintiff, as on a demurrer to evidence by the defendant. See 8 W. Va., 568.

I will by reference to some adjudged cases illustrate what is meant under this general rule by *materially variant*. The following are instances where the variance was deemed material: When the promise was stated to take away the potatoes in a reasonable time, and the proof was they were to be taken away within a month. *Hare* v. *Milner*, 1 Peake 42. So when the declaration stated that the purchaser should make a deposit of £—— (not stating the amount) and the proof was the deposit was to be *ten per cent. Merters* v. *Adcock*, 4 Esp. 251. The following are instances in which the variance was adjudged not material or fatal. In *Parker et al.* v. *Palmer*, 4 B. & A. 387 (6 E. C. L. 455), the suit was for the refusal of the defendant to accept and pay for certain rice according to the terms of the special contract. The contract was fully described in the declaration as it appeared in the proof, except that the declaration failed to state that the rice was to correspond with a certain sample. This variance was held immaterial, for the part of the contract omitted to be stated in the declaration was to be regarded not as a description of the article sold, but rather as a collateral engagement equivalent to a warranty that the rice should be of a certain quality. The plaintiff was only bound to set out accurately the contract for the breach of which he sued; and this warranty was not a part of this contract, but a collateral engagement on his part, and the plaintiff was not bound therefore to set it out in his declaration, though its breach would furnish to the defendant a ground of defence. In *Gladstone* v. *Neale*, 13 East 410, in a similar action the

declaration described the article sold and to be delivered, to be eight tons of hemp. It was proven that the article sold was *about* eight tons of hemp, and when weighed it turned out to be just eight tons; and therefore the court held that the contract in effect was for the sale of that precise quantity, and there was therefore no variance between the declaration and the proof. In *Welch* v. *Fisher*, 8 Taunt. 338 (4 E. C. L. 122,) the sale was of the stock of a soap-boiler at a valuation, which the declaration alleged had been made and amounted to a certain sum, but the proof showed that in the valuation certain pans were valued as sound, but if on the first boiling in them it turned out that any of them were unsound, a deduction was to be made from the valuation, and there was no proof that any of them were unsound. The court held that there was no material variation between the declaration and the proof.

Within the spirit of these decisions, if there be a material variation in describing the articles sold between the declaration and the proof, such variation would be held material and fatal to the suit. A comparison of the property sold as stated in each of the several special counts with the property, which the proof showed was contracted to be sold in the case now before the court, will show that they are materially variant. A material portion of the property actually sold, as shown by the proof, being omitted in each of the special counts. No one of the special counts states all the property which the proof shows was sold; and each of them was therefore fatally defective as a basis on which a verdict could be rendered for the plaintiffs, though all the property sold was set out in the declaration, some in one count and some in another. But the statements in one count cannot supply the defects in another, each being treated as a separate cause of action. The court ought therefore to have excluded the plaintiffs' evidence from the jury. But, though the declaration stated that the excess of the cost-value of the goods exceeding $1,000.00 was to be

1880
Special Term.

James & Mitchell
v.
Adams.

paid by the defendant in six and twelve months, and did not say that the defendant was to execute his notes therefor to the plaintiffs, and the proof was that by the contract he was to execute such notes for the deferred payments, yet this would not be a material variance or fatal to the plaintiffs' case, for the agreement to give the notes is a mere stipulation that certain evidence should be furnished of the obligation of the defendant under the contract ; and whether they were to be given or not would in no manner alter or change the real and substantial liability of the defendant under the contract.   Within the spirit of the above decisions even a misdescription in the declaration of the time, in which these notes were to be paid, would not have been fatal to the plaintiff's cause, for if, as alleged in the declaration, the defendant refused to accept the goods or make the cash payment, and thus repudiated the entire contract, he would be as much liable, if the notes to be given were payable at one time in the future as at another, the time in which they were to be paid being thus immaterial, as stated in the special counts in the declaration, it need not to have been alleged in the declaration, and if alleged, need not be proven as alleged, though the defendant might defend himself by proving that he would not accept the goods, because their tender was accompanied by the demand for notes for the deferred payments payable at a different time from that agreed upon when the contract of sale was made.   The fifth and sixth instructions asked for by the defendant ought not to be again given, if objected to by the plaintiff, as they do not lay down the law correctly.

As the contract for the sale of the property is an entire thing, the refusal of the defendant to take the goods at all, or to make the cash-payment, was a repudiation and breach of the entire contract, and the plaintiffs had at once a cause of action for such breach without waiting till the deferred payments would have become due under the contract, and without proving any formal tender of the balance of the term of the lease of the store,

1880
Special Term.

James & Mitch-
ell
v.
Adams.

for such refusal was a waiver by the defendant of such tender, and the jury would have a right to infer that the plaintiffs were prepared and ready to deliver to him the store-room as well as the goods but for this refusal of the defendant, and of course this cause of action is not lost by the plaintiffs, after the refusal of the defendant to accept the goods, selling them as their own. See Campbell, C. J., in *Hochter* v. *De Latour*, 2 El. & Bl. 678–697 (75 E. C. L.); *Ripley* v. *McClure*, 4 Exch. Rep. 345; *Cort* v. *Ambergate*, 17 Ad. & E. (79 E. C. L.) 127–147; *Girard* v. *Taggart*, 5 Serg. & R. 19; *Phillpots* v. *Evans*, 5 Mee. &. W. 475. The circuit court did not therefore err in modifying the defendant's first instruction by adding, that the suit was not prematurely brought, if the defendant repudiated the contract and refused to comply with the same and notified the plaintiffs thereof shortly after January 1, 1872. The court properly instructed the jury, that the proper measure of damages in such a case as this was the difference in the market-value of the goods at Parkersburg on January 1, 1872, or at the time the inventory was made, and the contract-price. This was decided, when this case was formerly before this Court. But the court might well have instructed the jury further, that the jury might, if the breach of the contract was proven, have also included in the damages that portion of the cost of taking the inventory, that was not paid by the defendant.

The counsel of the plaintiff in error insists, that on the reversal of judgment of the circuit court this Court should render a judgment for the defendant, as they insist that the plaintiffs' own evidence shows clearly that there was a delivery of the goods by the plaintiffs to the defendant and an acceptance by the defendant of the goods, and that more than a month afterwards the plaintiffs voluntarily repossessed themselves of these goods as their own property with the defendants implied assent, he not wanting them, and that this conduct of the parties amounts to a mutual rescission and abandonment of the contract,

and that no suit of any kind can thereafter be brought on the contract. The following authorities are cited by the counsel of the plaintiff in error as sustaining this position, *Smith* v. *Freed*, 5 Term R. 402; *Morris* v. *Rexrode*, 18 N. Y. 552; *Keely* v. *Ulty*, 1 Cow. 345; *Mallory* v. *Lord*, 20 Barb. 454; *Fancher* v. *Goodman*, 29 Barb. 315; *Coon* v. *Ried*, 1 Hill. (N. Y.) 511; *McEachron* v. *Rindles*, 34 Barb. 301; *Redmond* v. *Smoch*, 28 Ind. 365.

The legal proposition thus laid down by the counsel of the plaintiff in error, that such action and conduct by the parties would be an implied rescission of the contract, and the plaintiffs could have no cause of action thereafter, is unquestionably correct; and it is also true, that the evidence of the plaintiffs tends strongly to prove these facts, but it is equally obvious, that the defendant's evidence tends strongly to prove the contrary, and to prove that he refused to accept the goods and never did accept them. It was therefore properly a question of fact, whether the defendant had accepted these goods, and subsequently the plaintiffs repossessed themselves of them without any objection on the part of the defendant, and the contract was thereby rescinded by mutual consent; or whether the defendant, when the goods were tendered him, refused to accept them and never did accept them, and the plaintiffs never did consent to rescind their contract, but it was only repudiated by the defendant. This latter, it would seem from the verdict of the jury, was their conclusion from the evidence; and therefore on well settled principles it would be proper for this Court to permit the plaintiffs to amend their declaration, and it could not render a judgment for the defendant, and in setting aside the verdict this Court ought to award a new trial.

As the declaration was good in this case, the common counts being in it, no other course could be taken legally by this Court, even if we concurred with the counsel of the plaintiff in error, that the evidence clearly showed that the plaintiffs could not so amend their declaration as to give them a cause of action.

1880
Special Term.

James & Mitch-
ell
v.
Adams.

The counsel of the plaintiff in error also insist, that no tender of the residue of the term of the lease of the store was proven, and that this would be essential to sustain any action. But the refusal of the defendant to accept the goods, if proved to the satisfaction of the jury, would itself exempt the plaintiffs from any necessity to make a formal tender of the transfer of the remainder of their term in the store, and their willingness and readiness to transfer it might legitimately be inferred by the jury from their possession of the store under a lease and their tender of the goods.

The judgment of the circuit court of Wood county of October 17, 1878, must be reversed and annulled, and the appellant must recover of the appellees his costs expended in this Court; and this Court, proceeding to render such judgment as the court below ought to have rendered, doth sustain the defendant's demurrer to the three special counts in the plaintiffs' amended declaration, and doth overrule the demurrer to the common counts in the declaration and the demurrer to the whole declaration; and the verdict of the jury is set aside, and a new trial awarded, the costs of the last trial to abide the final decision of the case; and this case is remanded to the circuit court of Wood county with directions that that court do permit the plaintiffs to file an amended declaration in such time as the court may deem reasonable, and to proceed with this case according to the principles laid down in this opinion and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED, CAUSE REMANDED.